Elmer L. CAYLOR, Appellant,

v.

C. Edgar VIRDEN, Appellee.

No. 15123.

United States Court of Appeals
Eighth Circuit.

Jan. 5, 1955.

David Prager, Topeka, Kan., and Martin B. Dickinson, Kansas City, Mo. (Edward Rooney and Jacob A. Dickinson, Topeka, Kan., on the brief), for appellant.

William A. Rundle, Jr., Kansas City, Mo. (Henry W. Buck and Morrison, Hecker, Buck, Cozad & Rogers, Kansas City, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and COLLET and VAN OOSTERHOUT, Circuit Judges.

GARDNER, Chief Judge.

This was an action brought by appellant as plaintiff against the appellee to recover damages for personal injuries alleged to have been inflicted by appellee, a physican and surgeon, in connection with an X-ray treatment administered by or under the directions of appellee. We shall refer to the parties as plaintiff and defendant respectively. At all times

pertinent to the issues here involved defendant was a duly licensed physician and surgeon engaged in the practice of his profession in Kansas City, Missouri, and specializing in the use of the X-ray known in the medical field as roentgenology and radiology. The plaintiff, a farmer residing in the vicinity of Osawatomie, Kansas, had prior to the time of his alleged injury been given other X-ray treatments by the defendant for skin cancer. On June 22, 1951, he again consulted defendant in his professional capacity because of an apparent skin infection and was again given X-ray treatment and it is for alleged injuries received by him as the result of his treatment by defendant on this occasion that the present action is predicated. It is alleged in plaintiff's complaint inter alia that:

"(2) Defendant is and long has been a licensed and practicing physician and surgeon in Jackson County, Missouri, and at all times mentioned herein held himself out to the plaintiff and the public as a skilled and competent physician and surgeon and particularly as an expert in the use of the X-ray and in the medical field sometimes known as roentgenology and radiology.

"(3) On or about June 22, 1951, plaintiff presented himself to the defendant for consultation and treatment for a certain growth on his cheek, and defendant examined plaintiff and then gave him an X-ray treatment.

"(4) As part of said treatment plaintiff was physically confined and immobilized, and was further warned, as had been the case when plaintiff had previously received similar treatments from the defendant, that the X-rays were extremely dangerous, and that he should not move until instructed and permitted so to do by defendant or such person as defendant might leave in charge of plaintiff.

"(5) Defendant and his agents and servants negligently caused, permitted, and required plaintiff to remain confined, without attendance, for an excessive and unreasonable period of several hours in excess of the few minutes required for said treatment, after which plaintiff escaped only by his own efforts, and in violation of said warnings.

"(6) By reason of said wrongful and negligent acts of the defendant and his agents and servants plaintiff received permanent injuries and has been damaged in the sum of Twenty-Five Thousand and no/100 ($25,000.00) Dollars."

In due course defendant filed an answer putting in issue the material allegations of the complaint and specifically denying that the plaintiff suffered injury, permanent or otherwise, by reason of the X-ray treatment he had received but admitting that defendant was a duly licensed and practicing physician and surgeon and that he was consulted by the plaintiff at the time alleged and that he examined plaintiff and recommended the treatment administered. Thereafter defendant took the deposition of the plaintiff as an adverse party and then interposed a motion for summary judgment based on Rule 56(b) and (c) of the Federal Rules of Civil Procedure, 28 U.S. C.A., on the ground that the pleadings and depositions on file showed that defendant was entitled to judgment as a matter of law.

The trial court being of the view that it was disclosed by the pleadings and the deposition of the plaintiff that plaintiff suffered no physical injury, that there was no claim that he was inhumanly, maliciously or cruelly treated, or that plaintiff suffered an unlawful invasion of his rights, granted defendant's motion for summary judgment in his favor. From the judgment thus entered plaintiff prosecutes this appeal.

Rule 56, Federal Rules of Civil Procedure, provides in part as follows:

"(b) For Defending Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought

may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

"(c) Motion and Proceedings Thereon. The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * * "

The proceeding on motion for summary judgment is in the nature of an inquiry to determine whether or not there is a genuine issue of fact. It does not involve a trial and is not for the purpose of determining an issue of fact. The burden of proof is upon the movant and the evidence produced in support of such a motion must be viewed in a light most favorable to the party against whom it is directed. The rule in this regard is similar to that applicable on a motion for a directed verdict. The party against whom the motion is made is entitled to all favorable inferences which may be reasonably drawn from the evidence and if when so viewed reasonable men might reach different conclusions the motion should be denied. Dulansky v. Iowa-Illinois Gas & Electric Co., 8 Cir., 191 F.2d 881; Traylor v. Black, Sivalls & Bryson, Inc., 8 Cir., 189 F.2d 213; Ramsouer v. Midland Valley R. Co., 8 Cir., 135 F.2d 101; Parmelee v. Chicago Eye Shield Co., 8 Cir., 157 F.2d 582, 168 A.L.R. 1130. In Dulansky v. Iowa-Illinois Gas & Electric Co., supra, the court entered summary judgment for the defendant in a death by wrongful act case. In reversing the judgment it is among other things said [191 F.2d 884]:

" * * * It is apparent from a consideration of the court's findings and conclusions that in determining whether or not there was a genuine issue of fact the court gave no thought to what inferences might reasonably be drawn from the circumstances. The case is largely dependent upon circumstantial evidence. The court also failed to view the evidence, as it should, in a light most favorable to the plaintiffs. * * * "

It is also there said:

"The burden of proof was upon the movant, not upon the plaintiffs, and all doubts are resolved against the movant." (Citing cases.)

In Traylor v. Black, Sivalls & Bryson, Inc., supra, in reversing a judgment entered on summary proceeding this court said [189 F.2d 216]:

" * * * A summary judgment upon motion therefor by a defendant in an action should never be entered except where the defendant is entitled to its allowance beyond all doubt. To warrant its entry the facts conceded by the plaintiff, or demonstrated beyond reasonable question to exist, should show the right of the defendant to a judgment with such clarity as to leave no room for controversy, and they should show affirmatively that the plaintiff would not be entitled to recover under any discernible circumstances. Ramsouer v. Midland Valley R. Co., D.C.Ark., 44 F.Supp. 523, reversed on other grounds, 8 Cir., 135 F.2d 101. A summary judgment is an extreme remedy, and, under the rule, should be awarded only when the truth is quite clear. American Insurance Company v. Gentile Brothers Company, 5 Cir., 109 F.2d 732; Shultz v. Manufacturers & Traders Trust Company, D.C.N.Y., 1 F.R.D. 451; Drittel v. Friedman, D.C.N.Y., 60 F.Supp. 999; United States ex rel. Ryan v. Broderick, D.C.Kan., 59 F.Supp. 189. And all reasonable doubts touching the existence of a genuine issue as to a material fact must be resolved

against the party moving for summary judgment. Sarnoff v. Ciaglia, 3 Cir., 165 F.2d 167."

It thus appears that on motion for a summary judgment the field to be explored is a very narrow one. The manifest purpose of the rule is to strike sham claims and defenses which obstruct a prompt determination of real issues. With these rules in mind we turn to a consideration of the issue presented. For the purpose of this opinion we shall assume that under the governing law of Missouri in the absence of physical injury there can be no recovery for nervous shock or mental anguish. State ex rel. and to Use of Renz v. Dickens, Mo.App., 95 S.W.2d 847; Bennett v. St. Louis-San Francisco Ry. Co., 223 Mo.App. 28, 7 S.W.2d 1028; Porter v. St. Joseph Ry., Light, Heat & Power Co., 311 Mo. 66, 277 S.W. 913. Manifestly, the vital issue in this case is whether the plaintiff because of the negligent acts of the defendant suffered physical injury. The rule is readily stated but the difficulty arises in its application to varying facts and conditions. Thus in Dalzell v. Dean Hotel Co., 193 Mo.App. 379, 186 S.W. 41, 47, the plaintiff was through mistake ejected from her hotel room. Answering the contention that she had suffered no physical injury and hence was not entitled to recover the court said:

"Defendant's insistence that plaintiff received no *bodily injury* arises, we think, from an ambiguous use of the term 'bodily injury.' Certainly no one struck her, or made an assault upon her, nor did she receive a blow or wound upon the outside of her person. But she was ill, and notwithstanding this fact she was caused to leave her bed and room, and go to the lobby and upon the streets of a strange city under circumstances which greatly excited and wrought up her nervous system and increased her indisposition. Can it be said, as matter of law, that the hardship of getting out of bed and going to hunt her husband, under the exciting and humiliating circumstances of this case, and while indisposed, resulted in no *physical injury* to her? It is not a case of a woman suffering mere mental anxiety, suspense, and anguish of mind, and nothing more. * * *"

In the instant case can it be said as a matter of law that the plaintiff suffered no physical injury? The court based its decision on this question upon the testimony of the plaintiff as reflected in his deposition taken by the defendant. He in effect testified that in administering the X-ray treatment he was placed upon an X-ray table, warned that the X-rays were extremely dangerous and that he should not move until instructed. He was kept on this table for three and one-half hours. His narrative statement is in part as follows:

"* * * It was 4:30 when I got out of the room and I came out of my own accord and I hollered and hollered until I got out of breath, several times, trying to get them to let me out of there and they didn't do it. I was under three hours and a half just exactly. When Dr. Virden told this Jack to put me under there, he said 'Put him under there and give him the works.' * * * After I left the hospital I think I walked but I will have to tell you I was in pretty bad shape. I was so weak and so nervous that I just couldn't hardly walk. I don't know what all might have been wrong with me. While I was in the room I do not know of anything that fell on me. I rolled off the table. I rolled off the table and I had a hard time getting off. I was really pinned on there so that I couldn't move. They put something under each side on my head and I was afraid. I wanted off of there so bad and I had to get off—I was afraid to reach up to do anything for fear I might take hold of something I hadn't ought to. The only way I could get off was to pull those things off on each side of my head and pull the pillow off and that gave me a little space. Then

I rolled off on the floor. The table was approximately two or two and half feet high. When I rolled off the table I don't know how I landed. I might have hurt myself when I rolled off the table. I was hurt all over. I mean I hurt all over. I was in so much misery that I couldn't hardly do anything. * * * I don't know if I hurt myself when I rolled off the table or how I hurt myself. I don't know where I got the injury. I don't know if I got any injury of any kind or character when I rolled off the table * * *. Before I rolled off the table I cried out several times until I was out of breath and I could hear them talking and laughing out in the hall and they didn't come to me. I don't know exactly how long I made outcries. When I got off the table I staggered out of the room. The door was not locked; I opened it. After I got out of the room I fell into the arms of Dr. Virden's son, who is a young doctor. I did not see Jack or the elder Dr. Virden after I came out of the room. I saw the nurses. When I fell into Dr. Virden's arms he tried to talk good to me and I will say to help me to the restroom and made all the apologies a man could make in a few minutes, that he was sorry, very sorry, and he would guarantee that it would never happen again. I had a call of nature. As soon as I left the X-ray room I went to the bathroom. Dr. Virden stayed at the door. When I came back he assisted me back where my hat was. After I recovered a little bit I took my hat and left. * * *"

He further testified with reference to his condition following his treatment at the St. Joseph's Hospital saying in part as follows:

"* * * I have been nervous; I tremble, shake all over; anything bothers me and excites me. * * * By nervousness I mean generally nervous in a nervous way that I can't explain. Can't you tell when anybody is nervous? Everything made me nervous and I was just nervous and everything bothered me. I don't know how to explain how I knew I was nervous nor how the nervousness demonstrated itself. I was shaking all over. Palsy of my head and it has never quit hurting. * * * Most of the time I was shaking all over and anything bothers and excites me. I did not have the shaking palsy. I don't know whether the shaking was visible or not. * * * I was so nervous that it made me sick to my stomach at times. * * * I have had a headache ever since I left the St. Joseph's Hospital on June 22, 1951. * * *"

The mere fact that plaintiff may not have been able to explain the nature of his alleged injury is not, we think, proof that he suffered no physical injury. He was apparently a well, robust man when he was placed on the operating table with this X-ray machine trained on the growth on his cheek. A treatment which should have lasted apparently not exceeding fifteen minutes was inflicted on him for three and one-half hours. During that time he attempted to call for help or assistance to such an extent that he says he "hollered and hollered" until he was out of breath but no one came to relieve him. Finally, in desperation he pushed aside the sand pillows which held his face immobilized and rolled off onto the floor, a distance of some two and one-half feet, and he says in doing so he "hurt all over", or words to that effect. He finally staggered to his feet, made his way to the door and fell into the arms of a doctor who assisted him to the restroom. Can it be said as a matter of law that he was simply suffering nervous shock or mental anguish and that he had not received physical injury? Viewing the evidence and considering the surrounding facts and circumstances in a light most favorable to the plaintiff, we think the jury might have inferred that he suffered physical injury. At least it is not shown by clear and convincing proof that his condition as he staggered

744

from the X-ray room was not the result of physical injury.

 It is contended by defendant that no physical injury is specifically pleaded. It is however alleged that plaintiff received "permanent injuries." There was no motion interposed by defendant to require the plaintiff to make more definite and certain his allegation as to his injuries. In the absence of such a motion defendant is not in a position to contend that the allegation is not broad enough to cover physical injury. We think the contention wholly without merit.

The judgment appealed from is therefore vacated and set aside and the cause remanded for further proceedings consistent herewith.

Collet, Circuit Judge, dissented.