UNITED STATES of America,
Appellant,

v.

UNITED MARKETING ASSOCIATION,
a partnership, H. W. Helgevold, and
Izola M. Boyd, Executrix of the Estate
of G. C. Boyd, deceased, Appellees.

No. 16620.

United States Court of Appeals
Eighth Circuit.

June 29, 1961.

W. Harold Bigham, Atty., Civ. Div., Dept. of Justice, Washington, D. C., for appellant. George Cochran Doub, Asst. Atty. Gen., and John G. Laughlin, Atty., Civ. Div., Dept. of Justice, Washington, D. C., and F. E. Van Alstine, U. S. Atty., Sioux City, Iowa, on the brief.

Alan Loth, Fort Dodge, Iowa, for appellees. Lyman Lundy, Eldora, Iowa, on the brief.

Before VOGEL and BLACKMUN, Circuit Judges, and BECK, District Judge.

VOGEL, Circuit Judge.

This is an appeal from an order of the District Court granting summary judgment in favor of the appellees, United Marketing Association, a partnership, and the individual partners thereof, in an action brought by the United States, appellant, to recover damage for the conversion of shelled corn purchased by the appellees from the Burt Grain Company. The claim of conversion arose out of the following situation: The Commodity Credit Corporation, an agency and instrumentality wholly owned by the United States, deposited for storage with the Burt Grain Company substantially large quantities of shelled corn. The appellees were engaged in the grain brokerage business in the City of Fort Dodge, Iowa.

During a time when the Burt Grain Company did not have on hand sufficient corn to satisfy the negotiable warehouse receipts issued by it and held by Commodity, it sold to appellees carloads of corn without the knowledge or consent of Commodity, thereby, according to the government's complaint, converting the corn to their own use. The action was commenced September 17, 1953.

Subsequent thereto and during the pendency of the case, Congress, in order to afford relief to innocent purchasers of Commodity Credit Corporation grain, passed 15 U.S.C.A. § 714p, which provides as follows:

"§ *714p. Release of innocent purchasers of converted goods*

"A buyer in the ordinary course of business of fungible goods sold and physically delivered by a warehouseman or other dealer who was regularly engaged in the business of buying and selling such goods shall take or be deemed to have taken such goods free of any claim, existing or hereafter arising, by Commodity Credit Corporation, based on the want of authority in the seller to sell such goods, provided the buyer purchased such goods for value in good faith and did not know or have reason to know of any defect in the seller's authority to sell such goods. To be entitled to relief under this section a buyer must assert as an affirmative defense and establish by a preponderance of the evidence the facts necessary to entitle him to such relief."

After the passage of § 714p the appellees amended their answer and by allegation sought to bring themselves within the saving provisions thereof. On December 2, 1959, they filed their motion for summary judgment, supporting such motion with affidavits and their own answers to interrogatories. For the purpose of submitting the motion, the parties entered into a stipulation of facts. Among other things, it was stipulated that in March, 1952, a federal grand jury for the Northern District of Iowa returned an indictment charging Clyde L. Burt, the managing partner of Burt Grain Company, with conversion of certain corn owned by Commodity Credit Corporation. News of the indictment was published on April 9, 1952, in the Des Moines Register, a daily paper of general circulation in Iowa.

Burt was arraigned at Fort Dodge, Iowa, on June 17, 1952, but upon his insistence that completed delivery of Commodity-stored corn would vindicate him of any charges of conversion, the arraignment was continued. In August, 1952, an examination of the records of the Burt Grain Company disclosed that between January 1 and July 23, 1952, Burt had sold about 72,000 bushels of shelled corn in excess of the shelled corn purchased during that period. The United States thereupon applied for a writ of injunction restraining Burt from delivering shelled corn to anyone other than Commodity. The action was heard in the District Court at Waterloo, Iowa, on September 3, 1952. On September 11, 1952, the requested restraining order was issued. On September 4, 1952, the following news item was published in the Fort Dodge Messenger, a daily newspaper published at Fort Dodge, Iowa, the place where appellees conducted their brokerage business:

"Issue Injunction Against Grain Firm at Clarion, Rolfe

"Waterloo (AP)—the federal district court reported Thursday an injunction had been issued against the Burt Grain Company of Clarion and Rolfe, prohibiting it from selling any of its grain to any purchaser except the Commodity Credit Corporation pending a suit against the firm.

"The Government has sued the company, operated by Clyde L. Burt, alleging the firm sold grain which was the property of the corporation. At hearing the company consented to the injunction."

It was further stipulated that H. W. Helgevold, then surviving partner of United Marketing Association and one

of the appellees herein, would, if called to testify, claim that prior to the date of suspension of business of the Burt Grain Company (late September, 1952) neither he nor his partner had any knowledge or notice that Burt was selling government-owned grain; that he did not see the report of the indictment of Clyde L. Burt published in April, 1952, and had no knowledge that the Burt firm or any of its members was in jeopardy prior to the date the firm went out of business. He would testify, however, that he saw the report of the injunction proceedings published in the Fort Dodge Messenger on September 4, 1952, and that at that juncture the Burt account with the appellees was a debit account of several thousand dollars due to over-estimates of the contents of cars of grain previously shipped by Burt to appellees. He would further testify that he ascertained the identity of Burt's attorney and telephoned him to inquire whether Burt was still in business. The attorney advised him that Burt had delivered all government-owned corn and was at liberty to buy or sell grain as he pleased; that he, Helgevold, then went to Clarion to see Burt and found business going on as usual and being thus reassured, appellees continued to order grain from Burt up to the termination of the account.

It was further stipulated that on May 14, 1953, appellee Helgevold told a special agent for Commodity that he had seen a press report indicating that Burt was in trouble with the government, that appellees did not wish to have any further dealings with Burt but that since the latter was financially obligated to them for approximately $18,000 they felt they had to do so. He admitted to the special agent that one of the appellees had gone to Clarion, Iowa, and called on the Burt Grain Company to collect some money; that no collection was made but that Burt's business appeared to be operating as usual.

Upon this record, the trial court granted the appellees' motion for summary judgment. Federal Rules of Civil Procedure, Rule 56, 28 U.S.C.A.

On this appeal the government does not take issue with the granting of summary judgment with respect to shipments made prior to September 4, 1952, the date on which report of the injunction proceedings against the Burt Grain Company was published in the Fort Dodge Messenger and read by Helgevold. Accordingly, no consideration is given herein to the government's claim as originally made insofar as it referred to shipments prior to September 4, 1952.

■ It is, of course, academic that a motion for summary judgment should never be granted if there remains in the case a genuine issue of material fact. Credibility of the witnesses or of the parties may well be such a genuine issue. The trial court appeared to have that in mind when in its memorandum granting summary judgment it stated:

> " * * * In passing upon the present motion, the Court does not assume to pass on the credibility of the witnesses whose evidence is detailed by the plaintiff."

Nevertheless the court subsequently stated:

> "It would seem unlikely that experienced and reputable grain brokers as the members of the firm of the United Marketing Association would for the sake of a fraction of a cent commission purchase grain of large value which they knew had been misappropriated. It would also seem unlikely that they would so do if they had reason to know that such grain had been misappropriated."

There would appear little doubt from the foregoing statement that the trial court was, however, passing upon the credibility of the appellee partners, taking their assertion of innocence and good faith at its face value. In view of the relationship of credibility to the defense asserted under § 714p, supra, it can scarcely be gainsaid that the court in so doing resolved a dominant factual issue, thus not only invading the province of the jury but obviating the truth-testing proc-

ess of cross examination. In reversing the granting of a summary judgment, Mr. Justice Jackson, in Sartor v. Arkansas Natural Gas Corp., 1944, 321 U.S. 620, 628, 64 S.Ct. 724, 729, 88 L.Ed. 967, rehearing denied 322 U.S. 767, 64 S.Ct. 941, 88 L.Ed. 1593, said:

" * * * It may well be that the weight of the evidence would be found on a trial to be with defendant. But it may not withdraw these witnesses from cross-examination, the best method yet devised for testing trustworthiness of testimony. And their credibility and the weight to be given to their opinions is to be determined, after trial, in the regular manner."

See, also, Girard v. Gill, 4 Cir., 1958, 261 F.2d 695, 697; Johnson Farm Equipment Co. v. Cook, 8 Cir., 1956, 230 F.2d 119, 122, 123; Dulansky v. Iowa-Illinois Gas & Electric Co., 8 Cir., 1951, 191 F.2d 881, 883, 884; Arnstein v. Porter, 2 Cir., 1946, 154 F.2d 464, 469, 471, certiorari denied 330 U.S. 851, 67 S.Ct. 1096, 91 L.Ed. 1294; 62 A.L.R.2d 1194.

■■ 15 U.S.C.A. § 714p clearly places the burden on the buyer to establish as an affirmative defense and by a preponderance of the evidence that he purchased the goods for value, in good faith, and that he did not know or have reason to know of any defect in the seller's authority to sell. The court, in its opinion, seems to have placed the burden of proof on the wrong party when it found that the evidence relied on by the government to negative the statement of the appellees that they had no "reason to know"

that Burt was misappropriating grain "amounts at the most to a scintilla of evidence and is insufficient as a matter of law to justify submission of that issue to the jury." As the record now stands, there are only the bare assertions by the appellees upon which they must rely to carry the burden of proof by a "preponderance of the evidence". As opposed thereto are the news stories spoken of, supra, one of which was admittedly read by appellee Helgevold and which could have been found sufficient by a jury to have placed appellees on guard or, in other words, to "have reason to know". When there is added Helgevold's statement that while he saw from a press report that Burt was in trouble with the government, nevertheless dealings with Burt were necessary in view of the $18,-000 indebtedness, the conclusion is forced that genuine issues of credibility, knowledge and good faith were presented. Determination of such issues could only have been resolved by trial. It was error for the court to grant summary judgment. See: United States v. Farmers Mut. Ins. Ass'n of Kiron, Iowa, 8 Cir., 1961, 288 F.2d 560, 562; Kennedy v. Bennett, 8 Cir., 1958, 261 F.2d 20, 22; Realty Investment Co. v. Armco Steel Corp., 8 Cir., 1958, 255 F.2d 323, 324, 325.

Inasmuch as this case must be tried on its merits, we pretermit any discussion of the question raised by the government as to whether or not the appellees paid "value" for the corn purchased by them from Burt after September 4, 1952. That question will receive proper consideration upon trial.

Reversed and remanded.