**UNITED PACIFIC INSURANCE COMPANY, Appellant,**

v.

**UNITED STATES ex rel. MISSISSIPPI VALLEY EQUIPMENT COMPANY, Appellee.**

No. 16654.

United States Court of Appeals Eighth Circuit.

Dec. 4, 1961.

Edward Lester, Little Rock, Ark., Wright, Lindsey, Jennings, Lester & Shults, Little Rock, Ark., on the brief, for appellant.

Walls Trimble, Little Rock, Ark., R. Eugene Bailey, Little Rock, Ark., on the brief, for appellee.

Before GARDNER, Senior Circuit Judge, and VOGEL and VAN OOSTER-HOUT, Circuit Judges.

VOGEL, Circuit Judge.

Donald Leveck and Ruth A. Leveck, d/b/a J. H. Leveck & Sons, entered into a contract with the United States whereby they agreed to construct four county bridges at designated points along the St. Francis River in Arkansas. Pursuant to the provisions of the Miller Act, 40 U.S.C.A. § 270a et seq., the Levecks executed a bond in the amount of $457,639.-25 with the appellant, United Pacific Insurance Company, as surety. Being in need of equipment to carry out the provisions of the contract, Levecks entered into an equipment rental agreement which included an option to purchase with the appellee, Mississippi Valley Equipment Company. Such agreement is the subject matter of the instant litigation. Insofar as it may be pertinent to the present issue, the agreement is set forth as follows:

"Equipment Rental Agreement

"This Agreement, Made the fifteenth day of August in the year Nineteen Hundred and Fifty-seven by and between *J. H. Leveck & Sons, Cantrell and Riverside, Little Rock, Arkansas* hereinafter called the Lessee, and *Mississippi Valley Equipment Company, 1908 Railway Exchange Building, St. Louis, Missouri* hereinafter called the Lessor,

"*Witnesseth*, That the Lessee and the Lessor for the considerations hereinafter named agree as follows:

"Under the General Conditions of Lease printed on the reverse side of this sheet, the Lessor hereby leases to the Lessee all equipment named and identified in the following List of Equipment, for use at such location, at such rental rate and for approximately such time as is therein stated; and shall furnish such equipment free on board.......................

...................................
Lessor's carrier, Lessee's carrier, or name of Railroad

at St. Louis, Missouri

...................................
Here name the Lessor's shipping point

in good operative condition, with all necessary tools peculiar to the equipment and not standard, but without extra cable, sheaves, bolts, small parts, piping, hose, fuel, lubricants, supplies or crew.

### LIST OF EQUIPMENT

| Description of Equipment | Equipment To Be Used At or Near | Approximate Rental Period See Art. 5 | Manufacturer's Shop Number | Lessor's Identification Number | Value of Equipment | Rental Rate Per Article Unit | Base |
|---|---|---|---|---|---|---|---|
| One—size 9-B-3 McKiernan - Terry pile hammer equipped with flat bottom base and slotted guide plates mounted wooden skids | Lessee's Madison to Marianna Floodway Project | Min. one month | ~~10783~~ 12105 | | $5,395 | ~~$560~~ per mo. $392 | |
| One—size 400 Vulcan pile extractor complete with pulling links and pin mounted wooden skids | | | 3706 | | $2,945 | $325 per mo. | |

———◆———

"The agreed value or purchase price of the above equipment is indicated under the column 'Value of Equipment.' Lessor agrees to apply the first two months' rentals paid to this price if Lessee advises his intention in writing to purchase and pays the balance due on or before the expiration of the two month period. It is understood that this agreement is to remain a lease and that the Lessor retains title until purchase price in full is received at Lessor's St. Louis, Mo. office. As customary, Lessee pays loading, unloading, and transportation charges from and back to Lessor's (Kansas City, Kan., or St. Louis, Mo.) shop. Rental rates based on 175 hours per month with each hour of overtime to be paid for at 1/175th of the monthly rate.

"The Lessor and the Lessee for themselves, their successors, executors, administrators and assigns, hereby agree to the full performance of the covenants herein contained.

"*In Witness Whereof*, They have executed this Agreement the day and year first above written:

"MISSISSIPPI VALLEY EQUIPMENT
COMPANY
Lessor.

. . . . . . . . . . . . . . . . . . . . . . .
"(Signature of witness)
Witness.
By (signature illegible)
Secretary
J. H. Leveck & Sons
Lessee.
By (signature illegible)
. . . . . . . . . . . . . . . . . . . . . . . .
(Signature of witness)
Witness.
(reverse side)

"GENERAL CONDITIONS OF LEASE

"The conditions of lease here below stated, together with the Agreement set forth on the reverse side of this sheet, constitute between the parties therein named a contract which is hereafter referred to as this Agreement.

"1. THE RENTAL PERIOD. The Rental Period shall cover all time consumed in transporting the equipment, including the date of legal delivery to a public carrier for transit to the Lessee and upon return of the equipment, the date of legal delivery by such carrier to the Lessor, or if no public carrier is used, shall include the date upon which transit to the Lessee begins and the date upon which transit from the Lessee ends at the Lessor's unloading point; providing, however, that when the equipment moves from one lessee to another the rental period of the first shall not overlap that of the second.

"2. DETERMINATION OF RENTAL CHARGES. The Lessee shall pay rental for the entire Rental Period on each article of equipment named in the List of Equipment, at the rate therein stipulated and in accordance with the following:

"(a) Monthly Rental Rates shall not be subject to any deductions on account of any non-working time in the month, but the amount of rent payable for any fraction of a month at the beginning or end of the Rental Period shall be the monthly rental rate, prorated according to the number of calendar days in such fraction.

"(b) Daily Rental Rates shall not be subject to deductions for any non-working time in the day and shall be paid for each calendar day in the month except Sundays and legal holidays upon which the equipment is not operated.

"Daily and monthly rental rates stipulated in the List of Equipment contemplate an operating day of a regular single shift of either eight (8) or ten (10) hours, and for each hour over such eight (8) or ten (10) that the equipment is operated these rates shall be increased six (6) per cent of the daily rate throughout such period as the equipment is so operated.

"(c) Unit of Work Rates shall be paid for each unit of work in which the equipment participates, and the amount of rental shall, unless otherwise agreed in writing, be determined by the number of units shown in the supervising engineer's or architect's estimates.

"3. PAYMENT. If Lessee fails to take equipment reserved for him or cancels this Agreement, the Lessee shall pay to the Lessor as the minimum amount due under this Agreement, two (2) per cent of the total sum of values as shown under List of Equipment of each article of equipment, and shall pay as a minimum rental on each such article, loaded for transit to the Lessee, four (4) per cent of such value.

"If the Lessor so requests at any time, future payments of rental shall be made monthly in advance: otherwise the amount of rental accruing each month shall be paid on or before the fifteenth of the following month at the office of the Lessor or such other place as may be mutually agreed upon.

"Deferred payments shall bear interest at seven (7) per cent, but the payment of this interest shall not waive the Lessor's right as hereinafter stipulated to terminate this Agreement."

In accordance with the agreement, the appellee furnished and supplied to the Levecks a McKiernan-Terry pile hammer and a Vulcan pile extractor. Such equipment was received by the Levecks on October 1, 1957, and was used by or remained in the possession of Levecks or the appellant, United Pacific Insurance Company, until February 28, 1959. During that period Levecks made four payments on account as follows: March 26, 1958, $1,000; September 12, 1958, $1,000; November 17, 1958, $1,000; December 3, 1958, $1,000; total $4,000.

The Levecks defaulted on their contract with the government and it was taken over by the appellant as the surety on January 19, 1959. Appellee claimed that it was entitled to a monthly rental payment of $717 on the two pieces of equipment from October 1, 1957, through February 28, 1959, less $4,000 admittedly paid by Levecks. It accordingly made demand upon Levecks and the appellant surety company for the sum of $8,189

and upon payment being refused, brought this suit for such amount plus $982.62 statutory penalty plus reasonable attorney's fees and costs. In an answer and counter-claim (the counter-claim was subsequently abandoned) the appellant admitted an agreement between Levecks and appellee covering the two pieces of equipment described in the complaint and that Levecks had paid $4,000 under such agreement, but denied the allegation of the complaint regarding rental of $717 per month and a balance due of $8,189. It alleged that under the terms of the agreement the rental of the equipment was based upon the actual use of the equipment and that, "The liability of United Pacific Insurance Company under the bond it executed is limited to the fair market rental value of equipment actually used for construction on the Marianna Floodway Project." Pleading in the alternative, the appellant then alleged that the contract agreement between appellee and Levecks "should be construed as a sale, the rental set out in the agreement being grossly disproportionate to the actual rental value of equipment, and evidencing an intent to purchase with a rental being recited to create a possible expense deduction from income reported on federal income tax returns. Defendant specifically pleads that the parties intended a sale of the two pieces of equipment for Eight thousand three hundred and forty dollars ($8,340.00)."

It was agreed between the parties that the two pieces of equipment referred to in the agreement were used or available for use on the job site from October 1, 1957, to February 28, 1959. Levecks were in control of the construction work until January 19, 1959, on which date the Levecks, the surety and the Corps of Engineers for the United States entered into a supplemental contract wherein it was agreed:

> "The Surety will take over and complete the work remaining to be performed under said Contract * * *."

Shortly prior to trial appellee moved for summary judgment pursuant to Rule 56(a) and (c), Federal Rules of Civil Procedure, 28 U.S.C.A., on the grounds that it was entitled to judgment as a matter of law. The motion was grounded on the pleadings, exhibits annexed thereto, request for admissions and response, and the affidavit of the treasurer of the appellee to the effect that the equipment referred to in the agreement was rented for $392 per month for the pile driver and $325 per month for the pile extractor; that the equipment was received on or about October 1, 1957, used by and in the possession of the Levecks or their successors until February 28, 1959; that total rental had accrued of $12,189 against which there had been payments totalling $4,000, leaving a balance of $8,189.

At the hearing, the motion for summary judgment was strenuously resisted by the appellant. *Inter alia*, it was the contention of the appellant that notwithstanding the fact that the agreement between the Levecks and Mississippi Valley Equipment Company was designated as a rental agreement, it was something more in that it contained also an option to purchase. Appellant argues that the consideration listed in the agreement must have represented some payment for the option. Under 40 U.S.C.A. § 270a, the measure of the surety's liability is the actual rent to be paid on the equipment used on the job. Any portion of the consideration in the rental agreement which represents the *quid pro quo* for the option to purchase would not be an obligation of the surety. Appellant contends that the consideration for an option to purchase is included in the $717 per month expressed as rent and that "Before a contract has any bearing on the liability of a Surety it must first be established that the consideration recited in the contract covers only rentals and not some other right granted to contractor." In support of its contention that the consideration included something in addition to rentals, appellant points out that the agreed rentals as recited in the agreement were disproportionately high and did not represent a fair and

actual rent because such so-called rentals would have exceeded the agreed value of the equipment in less than one year.

The trial court overruled appellant's contentions and granted summary judgment against the appellant and the Levecks as follows: $8,189 representing amount due under the agreement, plus interest at the rate of 6% per annum, plus costs, plus 12% penalty in the sum of $982.68, and an attorney's fee in the sum of $1200.

On appeal the surety [1] argues:

"* * * The Equipment Rental Agreement (which is the sole basis for the summary judgment) is evidence but not conclusive on the amount of the fair market rentals, because the alleged rentals set out in this agreement represent a composite consideration for rentals and an option to purchase. In any event, the Appellant is entitled to have a jury pass on the question of whether the agreed rentals were really a fair and actual rent. If they were not, the rentals stipulated in the agreement were not binding on the Surety."

In employing the harsh remedy of summary judgment, we think the trial court erred in that there may have existed a genuine issue of material fact, and appellant was thereby prevented from having its day in court. Under the provisions of Rule 56(c), Federal Rules of Civil Procedure, 28 U.S.C.A., summary judgment " * * * shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In interpreting such rule, Judge Gardner, speaking for this court, said in Caylor v. Virden, 8 Cir., 1955, 217 F.2d 739, 741:

"The proceeding on motion for summary judgment is in the nature of an inquiry to determine whether or not there is a genuine issue of fact. It does not involve a trial and is not for the purpose of determining an issue of fact. The burden of proof is upon the movant and the evidence produced in support of such a motion must be viewed in a light most favorable to the party against whom it is directed. The rule in this regard is similar to that applicable on a motion for a directed verdict. The party against whom the motion is made is entitled to all favorable inferences which may be reasonably drawn from the evidence and if when so viewed reasonable men might reach different conclusions the motion should be denied. Dulansky v. Iowa-Illinois Gas & Electric Co., 8 Cir., 191 F.2d 881; Traylor v. Black, Sivalls & Bryson, Inc., 8 Cir., 189 F.2d 213; Ramsouer v. Midland Valley R. Co., 8 Cir., 135 F.2d 101; Parmelee v. Chicago Eye Shield Co., 8 Cir., 157 F.2d 582, 168 A.L.R. 1130."

This court also said in Northwestern Auto Parts Co. v. Chicago, B. & Q. R. Co., 8 Cir., 1957, 240 F.2d 743, 746, certiorari denied, 355 U.S. 815, 78 S.Ct. 16, 2 L. Ed.2d 32:

"* * * a summary judgment upon motion therefor by a defendant should never be entered except where the defendant is entitled to its allowance beyond all doubt; only where the conceded facts show defendant's right with such clarity as to leave no room for controversy; with all reasonable doubts touching the existence of a genuine issue as to a material fact resolved against the movant; giving the benefit of all reasonable inferences that may reasonably be drawn from the evidence to the party moved against. 'That one reasonably may surmise that the plaintiff is unlikely to prevail upon a trial, is not a sufficient basis for refusing him his day in court with respect to issues which are not shown to be sham, frivolous,

1. The appeal here is by the surety only.

or so unsubstantial that it would obviously be futile to try them.' Sprague v. Vogt, 8 Cir., 150 F.2d 795, 801; Traylor v. Black, Sivalls & Bryson, Inc., 8 Cir., 189 F.2d 213; Union Transfer Co. v. Riss & Co., 8 Cir., 218 F.2d 553; Caylor v. Virden, 8 Cir., 217 F.2d 739."

See also United States v. United Marketing Ass'n, 8 Cir., 1961, 291 F.2d 851, 853, 854; Severson v. Fleck, 8 Cir., 1958, 251 F.2d 920.

■■ Apparently a question similar to that which was resolved here by the trial court through the granting of summary judgment was involved in United States v. Campbell, 9 Cir., 1961, 293 F.2d 816. In affirming the action of the trial court there, where determination of the issue was had upon trial wherein evidence was adduced, the Court of Appeals stated, at 821:

"Appellee, as a precaution, argues that the rental agreement was in fact not a lease but a conditional sale contract covering capital equipment which was not totally consumed on the Miller Act jobs. Thus, appellee contends, the Miller Act bonds do not cover appellant's claim. The basis of appellee's contention is fairly and accurately summarized by the trial court in his opinion in the action against Fidelity (No. 17181), since Fidelity also raised the issue in the trial court. And the trial court's answer to the contention, also contained in the opinion, is clear and convincing, and we here adopt it:

" 'Defendants draw attention to the provisions in the agreement under which Anderson-Kerber was to pay $6116.00 per month commencing with March 20, 1956, until and including October 20, 1956, and to the fact that it provided that if payments were so made, Anderson-Kerber would have the privilege of purchasing the equipment at the exact amount of the payments set forth in the agreement. *Notwithstanding the fact that the agreement desig-* *nates the transaction as a rental it is contended that the agreed payment of the total value of the equipment within seven months compels the conclusion that a sale or conditional sale was involved. \* \* \**

" 'The fact that Anderson-Kerber was given an option to retain the equipment upon payment of the last installment raises some question as to the true meaning of this contract; however, a definitive determination of that issue must take account of all the provisions of the agreement as well as of the intent of the parties to it. \* \* \* The agreement here is entered into for a minimum rental period of one month, expressly provides for monthly payments over a stipulated period of time and for the retaking of the equipment by the lessor without any compensation to the lessee in the event of default. More-over, *evidence was introduced that the type of agreement here involved is often resorted to by lessors of earth moving equipment and is regarded in the trade as the usual leasing agreement. Expert testimony indicated to the court that the total monthly rental set forth was not unreasonable for rental of the type of equipment involved.* In view of the language of the contract and the evidence adduced, this court will treat the contract as what it purports to be i. e. a lease.'

" *The trial court's conclusion upon this issue is thus a determination of fact based in large measure upon the trial court's evaluation of expert testimony.*" (Emphasis supplied.)

We think in the instant case the appellant also was entitled to trial and the right to show, if it could, what part of the consideration represented rent and what part represented payment for the option to purchase. The fact that the trial court apparently believed that the appellant was unlikely to prevail on the issue was not sufficient basis for foreclosing appellant from having its day in court.

Reversed and remanded for trial.