In re Vernon N. CAROTHERS, Debtor.

**NORTH CENTRAL WOOL MARKET-ING CORPORATION, Plaintiff,**

v.

**Vernon N. CAROTHERS, Defendant.**

**Bankruptcy No. 3–81–488.
Adv. No. 81–0187.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

June 5, 1982.

JOHN J. CONNELLY, Bankruptcy Judge.

At St. Paul, in said District, this 15th day of June, 1982.

The above-titled case is before the undersigned United States Bankruptcy Judge upon plaintiff's motion for summary judgment.

NOW, upon all of the file, record and proceedings, the following Memorandum Decision, incorporating Findings of Fact and Conclusions of Law, is made and entered, and is deemed to comply with Rules of Bankruptcy Procedure.

## I.

On March 17, 1981, defendant filed a voluntary petition for relief under Chapter VII of the Bankruptcy Code. The petition seeks, inter alia, discharge of an indebtedness which is evidenced by a judgment entered in the District Court, County of Dakota, First Judicial District, State of Minnesota, in a case entitled *North Central Wool Marketing Corporation v. Output Systems, Inc., a Minnesota corporation, and Vernon N. Carothers.* Plaintiff challenges the dischargeability of this debt.

## II.

Throughout the period relevant to our inquiry, defendant was president of Output Systems, Inc., a Minnesota corporation engaged in designing and installing customized computer packages.

In mid-June, 1976, plaintiff entered into a contract with Output Systems whereby plaintiff agreed to purchase and Output agreed to sell and provide plaintiff with certain computer hardware and associated programming software to accomplish a "perpetual inventory control system."

In early August, 1976, Output was advised by the potential hardware supplier, Digital Equipment Corporation (DEC), that DEC would not meet its delivery date and that the delay in delivery would be substantial. With plaintiff's apparent blessing, Output assembled a new configuration of

Bruce Hanson, and Amy Sadoff, St. Paul, Minn., for plaintiff.

Jon Hopeman, Minneapolis, Minn., for defendant

hardware which combined DEC components with components produced by other computer manufacturers.

Delivery of the various components and their integration by Output occupied the better part of January through April, 1977. On April 25, Output began transfer of the equipment to plaintiff's facility; initial installation and set-up was completed on April 29, 1977.

On May 3, 1977, in a letter to plaintiff, Output submitted a revised completion schedule, which contemplated that the entire computer system would be completed and ready for use on or about May 21, 1977.

Defendant's version of precipitating events is not a matter of this record. According to plaintiff, the revised completion schedule was not met. "Between April 29 and June 16, the computer equipment broke down on at least twelve separate occasions. The programming software was not complete, and those portions of the programming software which were completed contained page after page of programming errors." *Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment, p. 3.* On June 24, 1977, plaintiff advised employees of Output to suspend their work and, by letter of July 1, 1977, revoked acceptance of both hardware and software.

On September 29, 1977, plaintiff commenced an action in Dakota County District Court against defendant and Output Systems, Inc., seeking compensatory damages of $106,095.16 and punitive damages of $200,000.00, for breach of contract and fraudulent misrepresentation.

The action came to trial on March 23, 1978. At the close of plaintiff's case, the trial court granted a defense motion to dismiss the punitive damage claim. On April 3, 1978, a jury returned a special verdict as follows:

"1. Did the defendant Vernon Carothers make fraudulent representations to the plaintiff North Central Wool Marketing Corporation concerning the computer system?

(Answer Yes or No)   Yes

If your answer to Question 1 is "Yes" then answer this question:

2. In what amount, if any, was the plaintiff North Central Wool Marketing Corporation damaged by the fraudulent misrepresentations of the defendant Carothers?

$28,750

3. Did the plaintiff North Central Wool Marketing Corporation justifiably revoke its acceptance of the computer system from the defendant Output Systems, Inc.?

(Answer Yes or No)   Yes

4. What were plaintiff North Central Marketing Corporation's consequential and incidental damages, if any, resulting from lack of completion of performance by the defendant Output Systems, Inc.?

$104.84

5. What were defendant Output Systems, Inc.'s consequential and incidental damages, if any, resulting from lack of completion of performance by plaintiff North Central Wool Marketing Corporation?

0   "

The trial court adopted the verdict of the jury as its Findings of Fact, appended Conclusions of Law and ordered judgment entered accordingly.

### III.

The summary judgment rule, *Rule 56(c), Federal Rules of Civil Procedure*, applies in this adversary proceeding; Rule 756, *Rules of Bankruptcy Procedure*, provides, in part, that:

"... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law...."

This rule serves a useful purpose in the scheme of judicial administration by providing a vehicle through which fictitious, vexatious, or unsubstantial fact issues can be separated from genuine substantive fact is-

sues which are properly reserved for resolution by a trier of fact. The rule enables a litigant to present to the Court for determination in a summary fashion those cases which can be determined solely upon questions of law.

Given this function, a Court must, first, examine the evidence presented on a motion for summary judgment with the view to ascertaining whether or not a triable material fact issue is presented. The Court's function is not to resolve disputed fact questions. *Doza v. American National Ins. Co., 314 F.2d 230 (8th Cir. 1963); Sprague v. Vogt, 150 F.2d 795 (8th Cir. 1945); Neff v. World Publishing Co., 349 F.2d 235 (8th Cir. 1965); Dulansky v. Iowa-Illinois Gas and Elec. Co., 191 F.2d 881 (8th Cir. 1951).* The moving party has the burden of affirmatively demonstrating the absence of any genuine issue of material fact when the evidence available is viewed in the light most favorable to the opposing party, *Percival v. General Motors Corp., 539 F.2d 1126 (8th Cir. 1976); Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Pfizer, Inc. v. International Rectifier Corp., 538 F.2d 180 (8th Cir. 1976) cert. den. 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977),* and must establish his right to a judgment with such clarity as to leave no room for controversy by demonstrating that the other party is not entitled to recover under any circumstances discernible from the evidence, *Goodman v. Parwatikar, 570 F.2d 801 (8th Cir. 1978); Bellflower v. Pennise, 548 F.2d 776, 777 (8th Cir. 1977); Robert Johnson Grain Co. v. Chemical Interchange Co., 541 F.2d 207 (8th Cir. 1976); Percival v. General Motors Corp., supra; Ozark Milling Co. v. Allied Mills, Inc., 480 F.2d 1014 (8th Cir. 1973); Windsor v. Bethesda Hospital, 523 F.2d 891 (8th Cir. 1975); Cervantes v. Time, Inc., 464 F.2d 986 (8th Cir. 1972) cert. den. 409 U.S. 1125, 93 S.Ct. 939, 35 L.Ed.2d 257 (1973),* while conceding to the answering party the benefit of all reasonable factual inferences, *McSpadden v. Mullens, 456 F.2d 428 (8th Cir. 1972),* and without regard to an assessment or measurement of credibility. *United States v. United Marketing Association,* 291 F.2d 851 (8th Cir. 1961); Johnson Farm Equipment Co. v. Cook, 230 F.2d 119 (8th Cir. 1956). The purpose of the rule is not to deprive litigants of the right to a trial if there are material fact issues to be decided, but to determine whether or not such material fact issue exists. *Poller v. Columbia Broadcasting Co., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944).* If the record discloses that there is a possibility of a genuine issue of fact, the motion must be resolved against the moving party, *Johnson Farm Equipment Co. v. Cook, supra; Caylor v. Virden, 217 F.2d 739 (8th Cir. 1955); Union Transfer Co. v. Riss & Co., 218 F.2d 553 (8th Cir. 1955); Traylor v. Black, Sivalls & Bryson, Inc., 189 F.2d 213 (8th Cir. 1951),* even where, though the basic facts are not in dispute, the parties can, in good faith, disagree on the subjective inferences to be drawn from established facts. *White Motor Co. v. United States, 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963); Pfizer, Inc. v. International Rectifier Corp., supra; Hart v. Johnston, 389 F.2d 239 (6th Cir. 1968); Washington Post Co. v. Keogh, 365 F.2d 965 (D.C.Cir.1966) cert. den. 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967).* In short, summary judgment is an extreme remedy which should be only sparingly employed. *Matter of Citizens Loan & Saving Co., 621 F.2d 911 (8th Cir. 1980); Giordano v. Lee, 434 F.2d 1227 (8th Cir. 1970); see, Nix v. Sweeney, 573 F.2d 998 (8th Cir. 1978).* Caution is the policy, but this does not mean that a court should hesitate to grant summary judgment in a case which is ripe for summary disposition.

## IV.

Plaintiff's motion for summary judgment is premised upon the contention that the doctrine of collateral estoppel bars relitigation of the factual issues surrounding the state court finding of fraud; and that the state court verdict satisfies the requisite elements of a nondischargeable debt within the meaning of the Bankruptcy Code, *Title 11 U.S.C. § 523(a)(2).*

In *Brown v. Felsen, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979)*, the United States Supreme Court ended considerable debate among the federal courts by holding that a bankruptcy court is not limited by the doctrine of res judicata to a review of the judgment and record of prior state court proceedings when considering dischargeability of a debt. By footnote, the court explicitly left unanswered the related issue of collateral estoppel, stating that:

"This case concerns res judicata only, and not the narrower principle of collateral estoppel. Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit. *Montana v. United States, 440 U.S. 147, 153 [,99 S.Ct. 970, 973, 59 L.Ed.2d 210] (1979); Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 [,99 S.Ct. 645, 649 n.5, 59 L.Ed.2d 645] (1979); Cromwell v. County of Sac, 94 U.S. 351, 352–353 [,24 L.Ed. 195] (1877).* If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court. Because respondent does not contend that the state litigation actually and necessarily decided either fraud or any other question against petitioner, we need not and therefore do not decide whether a bankruptcy court adjudicating a § 17 question should give collateral-estoppel effect to a prior state judgment. In another context, the Court has held that a bankruptcy court should give collateral-estoppel effect to a prior decision. *Heiser v. Woodruff, 327 U.S. 726, 736 [,66 S.Ct. 853, 857, 90 L.Ed. 970] (1946).* The 1970 amendments to the Bankruptcy Act, however, have been interpreted by some commentators to permit a contrary result. See 1A J. Moore, J. Mulder, & R. Oglebay, Collier on Bankruptcy § 17.16[6], p. 1650.2 (14th ed. 1978); Countryman, The New Dischargeability Law, 45 Am.Bankr. L.J. 1, 49–50 (1971). But see 1 D. Cowans, Bankruptcy Law and Practice § 253 (1978)." *Id. 442 U.S. at 139 n.10, 99 S.Ct. at 2213 n.10.*

Concensus has not yet been reached on the issue of what collateral effect will be given pre-bankruptcy state court judgments. Some courts read the congressional grant of exclusive jurisdiction in dischargeability determinations to bankruptcy courts to preclude application of collateral estoppel. *Carey Lumber Co. v. Bell, 615 F.2d 370 (5th Cir. 1980); Matter of Sneed, 13 B.R. 151 (Bkrtcy., Ohio 1981); In re McKenna, 4 B.R. 160 (Bkrtcy., Ill.1980); In re Day, 4 B.R. 750 (D.C., Ohio 1980), appeal dismissed 633 F.2d 214 (6th Cir. 1980); Franks v. Thomason, 4 B.R. 814 (D.C.Ga.1980).* In the Ninth Circuit, a prior state court judgment simply establishes a prima facie case of nondischargeabilty. *Matter of Gross, 654 F.2d 602 (9th Cir. 1981); Matter of Eskenazi, 6 B.R. 366 (Bkrtcy.App. 9th Cir. 1980); Lawrence T. Lasagna, Inc. v. Foster, 609 F.2d 392 (9th Cir. 1979); Matter of Busby, 16 B.R. 234 (Bkrtcy., Idaho 1981); In re Farley, 15 B.R. 11 (Bkrtcy., Or.1981).* The Eighth Circuit has not spoken determinatively. The better view appears to be that if all material matters of fact and law necessary to determination of bankruptcy fraud were fully litigated in the non-bankruptcy court, the debtor is estopped to deny the fraud in a later bankruptcy discharge proceeding. *Note, Res Judicata and Collateral Estoppel in Bankruptcy Discharge Proceedings, 37 Wash. & Lee L.R. 281 (1980); e.g., Spilman v. Harley, 656 F.2d 224 (6th Cir. 1981) and cases cited therein; Matter of Supple, 14 B.R. 898 (Bkrtcy., Conn.1981); In re Webster, 1 B.R. 61 (Bkrtcy., Va.1979).*

Careful application of collateral estoppel, in this context, has no small practical appeal:

"Applying collateral estoppel is logically consistent with the Supreme Court's decision in *Brown* and the exclusive jurisdiction of the bankruptcy courts while at the same time encouraging judicial economy. The determination whether or not a certain debt is dischargeable is a legal con-

clusion based upon the facts in the case. The bankruptcy court has the exclusive jurisdiction to make that legal conclusion. It must apply the statute to the facts and decide to discharge or not. Therefore, res judicata does not apply to prevent litigation of every issue which might have been covered in the state court proceeding on the debt. However, that Congress intended the bankruptcy court to determine the final result—dischargeability or not—does not require the bankruptcy court to redetermine all the underlying facts. As the Court held in *Brown*, where the facts necessary for a dischargeability determination were not necessary to the determination in the prior judgment, the parties should not be bound or else the parties would always have to anticipate future bankruptcy proceedings and the state courts would be deciding facts not necessary to the state proceedings but only relevant to a possible future bankruptcy proceeding. In effect, state courts would then be deciding issues directly concerning dischargeability, contrary to congressional intent. However, where the factual issues necessary for dischargeability determination were also necessary to the state court determination, the parties would not have to anticipate the bankruptcy proceedings and the state courts would not be determining issues irrelevant to the state proceedings. Collateral estoppel is applied to encourage the parties to present their best arguments on the issues in question in the first instance and thereby save judicial time. There is no reason to suppose that parties will not vigorously present their case on issues necessary to the state court proceeding or that the bankruptcy court will be any more fair or accurate that the state court in the determination of the facts. Thus, there is no reason to allow relitigation of facts previously litigated which were necessary to the outcome of that prior litigation. This Court holds that where all the requirements of collateral estoppel are met, collateral estoppel should preclude relitigation of factual issues." *Spilman v. Harley, supra at 227–28.*

The generally accepted requirements for collateral estoppel have been variously articulated, but appear most frequently as follows:

1) The issue sought to be precluded must be the same as that involved in the prior action;

2) The issue must have been actually litigated;

3) It must have been determined by a valid and final judgment; and

4) The determination must have been essential to the final judgment.

*Matter of Ross, 602 F.2d 604, 608 (3rd Cir. 1979); cf., Oldham v. Pritchett, 599 F.2d 274 (8th Cir. 1979).* In sum, this "identity of standards" test, *see, In re Supple, supra at 904 n.8,* requires that the parties confront, in all respects, identical burdens in the state and federal forums. *Cf., Matter of Farmer, 17 B.R. 111 (Bkrtcy., Ga.1981); Matter of Youngstrand, 16 B.R. 238 (Bkrtcy., Fla.1981); In re Cooney, 8 B.R. 96 (Bkrtcy., Ky.1980).*

The available state record in this case consists of plaintiff's pleadings, the special verdict, the trial court's Conclusions of Law and Order for Judgment, the Judgment Decree, and selected trial transcript excerpts. While barely ample, these documents demonstrate a significant disparity between the standards employed in the state court proceedings and those necessary to a finding of fraud under 11 U.S.C. § 523(a)(2).

▮ Among the submissions is a transcript of the state court's charge to the jury, which reads, in pertinent part:

" . . . In order for the plaintiff Wool Marketing Corporation to recover for fraudulent misrepresentation the plaintiff must prove each of the following essential elements of that claim by the greater weight of the evidence as I have told you. No. 1, there has to be a representation; two, that representation must be false; three, it must have to do with a past or present fact; four, the fact must be material; five, it must be susceptible of knowledge; six, the representor must know it to be false or in the alternative

must assert it as of its own knowledge without knowing whether it is true or false; seven, the representor must intend to have the other person induced to act or justified in acting upon it; eight, that person must be so induced to act or so justified in acting; nine, that person's actions must be in reliance upon that representation; ten, that person must suffer damage; and, eleven, that damage must be attributable to the misrepresentation. That is to say, the statement must be the direct cause of that injury. *I'm further instructing you that is it* [sic] *not necessary to prove an intention to deceive to prove fraudulent misrepresentation.*" [Emphasis added]

The trial court's instruction on intent to deceive accurately enunciates Minnesota state law that a simple negligent misrepresentation will support an action for fraud. *8A Dunnell's Minn. Digest 2d, Fraud § 2.03 (3rd ed. 1979)*. By contrast, the false representation necessary to render a debt nondischargeable in bankruptcy is fraud which involves moral turpitude or intentional wrong; "actual fraud," within the meaning of Section 523(a)(2), connotes deceit, artifice, trick or design, involving direct or active operation of the mind. *In re Pommerer, 10 B.R. 935 (Bkrtcy., Minn.1981); In re Peterson, 9 B.R. 835 (Bkrtcy., Nev.1981)*. Fraud implied by law, which may exist without imputation of bad faith or immorality, is insufficient. *See, generally, 3 Collier on Bankruptcy, Para. 523.08 (15th Ed. 1981)*. The level of intent required for bankruptcy fraud is clearly not necessary to a jury's finding of fraud under the instructions given in this case.

■ Application of collateral estoppel is further stymied by the variance in the standard of proof in the state proceedings and in this action. The state jury was instructed on the parties' burden of persuasion as follows:

"In these instructions whenever I say a claim must be proved I mean that all of the evidence in the case by whomever produced must lead you, the jury, to believe that it's more likely that the claim is true than it is that it is not true. In this lawsuit the plaintiff Wool Marketing Corporation must prove its case by the greater weight of the evidence and similarly the defendant Mr. Caruthers has the burden of proving his claim on his counterclaim by the greater weight of the evidence."

To sustain an action for exception to discharge in bankruptcy, plaintiff's proof must not only preponderate, it must be clear and convincing. *Brown v. Buchanan, 419 F.Supp. 199 (Va.1975); In re Pommerer, supra*. In this light, application collateral estoppel is inappropriate. *In re Farley, 15 B.R. 11 (Bkrtcy., Or.1981); In re Iannelli, 12 B.R. 561 (Bkrtcy., N.Y.1981); Matter of Trewyn, 12 B.R. 543 (Bkrtcy., Wisc.1981)*.

■ It merits emphasis that exceptions to discharge are to be strictly construed. *Gleason v. Thaw, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); Matter of Vickers, 577 F.2d 683 (10th Cir. 1978); Davison-Paxon Co. v. Caldwell, 115 F.2d 189 (5th Cir. 1941)*. This imposes upon the objecting creditor a very heavy burden of proof to establish that the debt in question is squarely encompassed by a statutory exception. *Household Finance Corp. v. Danns, 558 F.2d 114 (2nd Cir. 1977); In re Huff, 1 B.R. 354 (Bkrtcy., Utah 1979)*. From the spare record now before this Court, which includes neither the original contract nor ensuing correspondence of the parties, contrary inferences regarding the intent and motive of this debtor can be readily drawn. Genuine issues of material fact remain unresolved.

## V.

■ Defendant has made demand for trial by jury. Insofar as the demand relates solely to the factual issues subsidiary to the question of dischargeability, this demand is timely and appropriate. *In re Patterson, 6 B.R. 149 (Bkrtcy., Ohio 1980); Matter of Evans, 1 B.R. 229 (Bkrtcy., Fla. 1979)*. The ultimate determination of the dischargeability of this debt remains one for the Court. *In re Swope, 466 F.2d 936 (7th Cir. 1972) cert. den. 409 U.S. 1114, 93 S.Ct. 929, 34 L.Ed.2d 697 (1973)*.

Wherefore, it is—

ORDERED:

That plaintiff's motion for summary judgment shall be, and hereby is, denied.