In re Larye ANDERSON, Debtor.

Larye ANDERSON, Plaintiff,

v.

Karen Lee ANDERSON, Defendant.

Bankruptcy No. 3–83–0718.
Adv. No. 3–84–0141.

United States Bankruptcy Court,
D. Minnesota,
Third Division.

June 20, 1986.

Timothy D. Moratzka, Hastings, Minn., for plaintiff.

Michael P. Kircher, St. James, Minn., for defendant.

GREGORY F. KISHEL, Bankruptcy Judge.

This adversary proceeding has been submitted to the undersigned United States Bankruptcy Judge for decision based upon a Stipulation of Fact and Memoranda of Law. Plaintiff appears by his attorney, Timothy D. Moratzka.[1] Defendant appears by her attorney, Michael P. Kircher. All parties have advised the Court that in their opinion the matter is ready for decision. These Findings of Fact, Conclusions of Law, and Order for Judgment are entered accordingly.

## FINDINGS OF FACT

Plaintiff is a Martin County, Minnesota farmer who filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code in this Court on April 22, 1983.[2] Defendant is his ex-wife. In the spring of 1982, Defendant commenced a proceeding for dissolution of marriage against Plaintiff in Martin County Court. The dissolution proceeding was tried to the Court on December 8 and 9, 1982. On December 20, 1982, that Court entered a Judgment and Decree dissolving the marriage of the parties. The Judgment and Decree reserved the issues of spousal maintenance, property division, attorney fees, and other matters pending submission of proposed findings and written arguments by counsel.

On May 5, 1983, after the commencement of his Chapter 11 case, Plaintiff filed an application for removal of the dissolution proceeding to this Court. By an Order dated May 10, 1983, Judge Robert J. Kressel of this Court abstained from the dissolution proceeding and remanded it to Martin County Court. On June 6, 1983, Judge Kressel denied Plaintiff's motion for reconsideration of the abstention Order. Plaintiff then appealed Judge Kressel's original abstention Order to the U.S. District Court. Judge Kressel denied Plaintiff's motion for stay pending appeal on June 20, 1983; District Judge Paul A. Magnuson denied Plaintiff's renewed motion for stay pending appeal on August 8, 1983. Judge Magnuson ultimately affirmed Judge Kressel's abstention Order in a decision dated October 14, 1983.

On April 26, 1984, the Martin County Court (Donald J. Lasley, J.) entered Amended Findings of Fact and Conclusions of Law, an Order for Judgment and a final Judgment and Decree of Dissolution of Marriage. Under the Amended Judgment and Decree, Plaintiff was awarded the parties' farm real estate and, apparently, all farm equipment, vehicles, and harvested crops, subject to the liens and encumbrances of record thereon. Defendant was awarded the household goods and cash then in her possession.

Those terms of the Judgment and Decree which are at issue in this adversary proceeding are as follows. First, Plaintiff was ordered to pay to Defendant "as and for her attorneys [sic] fees incurred in the prosecution of this action the sum of $10,000.00, which sum shall be paid within six (6) months of the entry of the Decree herein." Second, Defendant was awarded spousal maintenance from Plaintiff in the sum of $15,000.00 per year for a period of ten years, payable in equal monthly installments of $1,250.00 per month. In the

---

1. While this matter was under advisement Mr. Moratzka withdrew from representation of Plaintiff pursuant to order of this Court (John J. Connelly, J.).

2. Debtors' bankruptcy case was converted to a Chapter 7 case on January 4, 1985; Debtor was granted a discharge on April 16, 1985. The conversion of the case does not render this adversary proceeding moot, though it moots certain aspects of Plaintiff's argument.

Amended Judgment and Decree, Judge Lasley specifically stated: "[t]his maintenance is intended to be in lieu of any property settlement and is intended by this Court to balance the relative incomes of the parties." Third, he further ordered that the maintenance award be secured by a mortgage against all real property, and a security interest against all personal property, awarded to Plaintiff under the dissolution Decree. Fourth, Plaintiff was ordered to assume responsibility for and to indemnify and hold Defendant harmless from the farm-related debt incurred by the parties during the marriage, which totalled over $863,000.00. Last, Plaintiff was ordered to pay the sum of $3,500.00 to Defendant within one year of the date of entry of the Judgment and Decree, to discharge arrearages which had accrued on Plaintiff's spousal maintenance obligation under a temporary Order in the dissolution proceeding.

In a memorandum, Judge Lasley set forth the rationale behind the terms of the Judgment and Decree. He noted Plaintiff had taken several actions during and after trial which had prevented the Court from promptly issuing a final Decree. These included Plaintiff's alleged "lapse of memory" during trial testimony as to the amount and value of his grain inventory; Plaintiff's discharge of his dissolution attorney after trial but before submission of post-trial pleadings, and his lengthy delay in retaining new counsel; his new counsel's request for an extension of time for submission of post-trial pleadings and failure to promptly obtain a trial transcript; and the filing of Plaintiff's Chapter 11 Petition. Judge Lasley further noted

> [t]he fact that the debts incurred by [Plaintiff] increase substantially between August of 1982 and the time of trial in December of 1982 lead the Court to conclude that [Plaintiff] was attempting to magnify his debt load unrealistically in order to prevent [Defendant] from being awarded any support, maintenance or other money.

Judge Lasley summarized his reasons for structuring the Judgment and Decree as follows:

> The Court has given careful consideration to the possibility of dividing marital property as opposed to awarding maintenance for a period of time. The [Plaintiff's] business is complex and debt-laden. The Court has concluded that a division of property in place of maintenance would not be appropriate in that it would not guarantee the [Defendant] the necessary amounts to sustain herself in any appropriate lifestyle over the period that maintenance is payable. Since the [Defendant] is a co-debtor on most of the debts incurred by the [Plaintiff], a division of property would not result in any income to her, but may in fact result in a substantial liability for these debts. This could result in the [Defendant's] bankruptcy, as well as the [Plaintiff's]. Instead, the Court has chosen to make provision for the maintenance of the [Defendant] over a period of ten years. This will allow the [Defendant] to obtain the necessary education, training and experience to provide adequately for herself independent of [Plaintiff]. The [Plaintiff] is well able to pay the maintenance provided for in this Decree. His income in 1981 exceeded $65,000.00. Given his apparent expertise in business, it is very likely that he will continue to be successful and will continue to make enough money to provide for both himself and the [Defendant]. Given the income figures now in evidence, the [Plaintiff] will probably be making more than twice as much as the [Defendant], even after paying the maintenance payments.

Judge Lasley justified the requirement of security for the maintenance award via encumbrances against Debtor's farming assets by noting

> ... the only way for [Plaintiff] to survive is to procure additional credit. Given the testimony concerning the failing economy and the substantial debt load that [Plaintiff] already carries, the Court decided to provide a means by which the maintenance payments could be more se-

cure ... in this manner, should a liquidation occur, [Defendant] will be entitled to receive her maintenance payments even though [Plaintiff] has encumbered his property to nearly the full extent of its value.

Lastly, in connection with the attorney fee award, Judge Lasley noted

Likewise, the award of attorney fees was designed to protect the [Defendant] from expending a large portion of her maintenance award in the coming years on attorneys fees. The [Defendant] has virtually no assets, and has paid her attorney nothing throughout this very lengthy proceeding. The attorney has incurred substantial expenses in prosecuting this case for which he has not been reimbursed by [Defendant]. These expenses were incurred solely in procuring and enforcing this Decree and the Temporary Order of this Court which required the [Plaintiff] to pay temporary maintenance. These attorneys fees are directly related to and connected with the award of maintenance.

## CONCLUSIONS OF LAW

In submitting this adversary proceeding for decision, Plaintiff argues that the various spousal maintenance, debt-indemnification, and attorney fee provisions of the parties' Amended Judgment and Decree of dissolution of marriage are void under three different bankruptcy law theories.[3] First, Plaintiff argues that entry of the final Judgment and Decree, to the extent it created or secured obligations, violated the automatic stay against creditor collection activity under 11 U.S.C. § 362. Second, Plaintiff argues that these provisions created a debt in the nature of a property settlement rather than spousal support, which hence is subject to restructuring and/or discharge in bankruptcy. Third, Plaintiff argues that the dissolution liens which attached to his farm real estate and

personal property purported to secure an unmatured nondischargeable debt, and hence were void under the combined operation of 11 U.S.C. §§ 502(b)(5) and 506(d). In her Answer and Counter Complaint, Defendant seeks the Court's declaratory judgment that the maintenance and attorney fee provisions of the Judgment and Decree are an award of spousal support which is nondischargeable in bankruptcy under 11 U.S.C. § 523(a)(5). The Court will treat Plaintiff's three arguments individually, and Defendant's argument in conjunction with Plaintiff's second argument.

### A. Automatic Stay Issues.

As his first challenge to the validity of the dissolution Decree, Debtor acknowledges that Judge Kressel's Order of Remand returned the dissolution proceeding to state court. However, he argues that Judge Kressel did not grant relief from stay to Defendant to obtain any Order or Decree affecting the parties' and the estate's rights and liabilities.

■ To be sure, this Court has recognized that postpetition acts to enforce prepetition debt and to create or perfect liens securing prepetition debt violate the automatic stay of 11 U.S.C. § 362(a) and are void—or, at the least, voidable. *Landmark v. Schaefbauer,* 41 B.R. 766, 770 (Bankr.D.Minn.1984); *In re Victoria Grain Co. of Mpls.,* 45 B.R. 2, 6–7 (Bankr. D.Minn.1984). However, Debtor's second argument fails on two independent bases.

■ First, the record does not clearly demonstrate that Defendant took any action which violated the stay. There is no evidence in the record that either Defendant or her dissolution counsel took any action after the commencement of Debtor's bankruptcy case to proceed to judgment in the dissolution proceeding. The dissolution was tried and the bonds of marriage between Debtor and Defendant were dis-

---

**3.** Plaintiff's Complaint sets forth two additional "Questions for Determination"—arguments that Martin County Court lacked jurisdiction to affect property of the bankruptcy estate, and that the attachment of dissolution liens against property of the estate was an unauthorized postpetition transfer void under 11 U.S.C. § 549—which are not addressed in his Memorandum of Law. The Court assumes Plaintiff has abandoned these arguments and will not address them.

solved prior to Debtor's bankruptcy filing. Debtor filed his bankruptcy Petition about four and one-half months after the parties were ordered to submit proposed findings and written argument in the dissolution action. There is no specific evidence before this Court that Defendant's dissolution counsel submitted these documents after Debtor filed for bankruptcy. The only evidence bearing on the issue of the parties' postpetition actions is Judge Lasley's memorandum notation of Plaintiff's dilatory post-trial actions; that, however, does not include any dates establishing when Plaintiff's successor dissolution counsel became involved, or when Defendant completed her submission. Judge Lasley does note that Plaintiff's dissolution counsel never did submit proposed findings, allegedly because he had not obtained a trial transcript. There is no evidence that either party took any other affirmative action to press the dissolution to final Decree after Plaintiff's bankruptcy. The record as easily supports a finding that Judge Lasley merely had the dissolution under advisement when Plaintiff filed for bankruptcy and proceeded to decision without further action by the parties. This Court is unable to find any published case or other authority dealing with the issue of whether the postpetition entry of decision in a state court action involving a debtor in bankruptcy which was under advisement as of the commencement of the bankruptcy case violates the stay in any way. Debtor has failed to prove that Defendant violated the stay. It is fair to assume that Judge Lasley felt he was free to enter a final Decree in the dissolution proceeding, acting on Judge Kressel's remand order and Judge Magnuson's affirmance thereof. In view of this Court's extreme reluctance to extend the strictures of the automatic stay over state court judicial officers (as opposed to parties to state court proceedings) under the unique procedural circumstances involved here, it cannot find that the entry of the Judgment and Decree violated the automatic stay in any way.

In any event, the Court concludes that Judge Kressel's remand order effectively granted the parties relief from stay to proceed to judgment in the dissolution. Under the local bankruptcy rules in effect as of the date of Judge Kressel's Order of Remand, the Martin County Court was free to "thereupon proceed with" the dissolution upon receipt of a certified copy of Judge Kressel's Order. SUGG'D INTERIM BANKR. R. 7004(j), adopted in the District of Minnesota by *Gen. Order in Bankr.* (D.Minn.) (undated), effective October 1, 1979. This Rule was controlling law in this District until August 1, 1983, the effective date of the new Federal Rules of Bankruptcy Procedure. While SUGG'D INTERIM BANKR. R. 7004(j) did not contain language expressly granting relief from stay upon remand, its language strongly suggests that a remand order had that effect. In any event, on its face it clearly seems to allow a state court on remand to "proceed" to decide a case under advisement which was improvidently removed to Bankruptcy Court.[4]

Thus, under either of these grounds it is clear that the terms of the amended dissolution decree, to the extent that they affect Debtor or the property of his bankruptcy estate, are not void for violation of the automatic stay.

**B. Dischargeability Issues**

Debtor's second—and more substantial—challenge to the validity of the dissolution decree is premised upon the following language of 11 U.S.C. § 523(a)(5):[5]

---

**4.** It should also be noted that the Bankruptcy Court was and is empowered to annul the automatic stay. 11 U.S.C. § 362(d). Thus, even had the Court not concluded that Judge Kressel's remand order embodied an Order granting relief from stay as a matter of law, it would now be inclined to annul the stay to ratify Judge Lasley's actions—again, because of the unique procedural circumstances presented here.

**5.** Debtor filed his bankruptcy Petition prior to October 9, 1984, the effective date of the nonjurisdictional amendments to the Bankruptcy Code enacted in the Bankruptcy Amendments and Federal Judgeships Act of 1984. Thus, the prior language of § 523(a)(5) governs this adversary proceeding. Pub.L. No. 98–353, § 553(a), 98 Stat. 333, 392 (1984). The changes would not be material to this adversary pro-

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(A)(26) of the Social Security Act); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support; ...

This provision basically makes nondischargeable in bankruptcy any debt arising from a family support obligation imposed under state law, where embodied in an agreement or divorce decree. *In re Rodriguez,* 22 B.R. 309, 310 (Bankr.W.D.Wis. 1982). Debts created in divorce agreements or decrees which are in the nature of a property division and not in the nature of a family support obligation are dischargeable in bankruptcy. *In re Kagan,* 42 B.R. 563 (Bankr.N.D.Ill.1984); *In re Pody,* 42 B.R. 570 (Bankr.N.D.Ala.1984). Whether a particular debt created in a state court dissolution decree is a family support obligation or a property division is a question of federal law. H.R.REP. No. 595, 95th Cong., 1st Sess. 364 (1977); S.REP. No. 989, 95th Cong., 2d Sess. 79 (1978), U.S. Code Cong & Admin.News 1978, p. 5787; *In Re Williams,* 703 F.2d 1055, 1056–7 (8th Cir.1983); *In re Daiker,* 5 B.R. 348, 350–1 (Bankr.D.Minn.1980). The denomination of a particular obligation as set forth in a state court decree is not controlling on the Bankruptcy Court. *In re Seablom,* 45 B.R.

445, 450 (Bankr.D.N.D.1984). Dischargeability under § 523(a)(5) must be determined by the substance of the liability, rather than its form. *In re Spong,* 661 F.2d 6, 9 (2nd Cir.1981); *Shaver v. Shaver,* 736 F.2d 1314, 1316 (9th Cir.1984). Ultimately, the Bankruptcy Court must determine the function which the parties (in the case of an agreement of decree based upon a stipulation) or the Court (in the case where the matter was tried as a contested proceeding) intended the award to serve. *In re Williams* at 1057; *In re Coil,* 680 F.2d 1170, 1172 (7th Cir.1982); *In re Shumate,* 39 B.R. 808 (Bankr.E.D.Tenn.1984). This is a question of fact. *In re Williams* at 1057; *Boyle v. Donovan,* 724 F.2d 681, 683 (8th Cir.1984).

The Bankruptcy Court may consider a lengthy list of factors in determining the nature and function of obligations created in a family-court decree. The factors include the following:

1. Whether the debtor's obligation of payment terminates on the death or remarriage of the recipient, or on the death of the debtor;

2. Whether the debtor's obligation of payment terminates when dependent children reach the age of majority or are otherwise emancipated;

3. Whether the payments are to be made directly to the recipient;

4. The relative earnings of the debtor and the recipient at the time of stipulation or trial;

5. Whether the recipient relinquished property rights in consideration for the entitlement to payments from the debtor;

6. The length of the debtor's and the recipient's marriage and the number of dependent children which they had;

7. The facial language of the decree itself and the inferences to be drawn from the inclusion of specific provisions in it;

ceeding in any event. It should also be noted that the Minnesota Legislature has enacted numerous, sometimes successive amendments to family-law statutes since the dissolution trial

here. The Court will apply the language of the 1982 codification of MINN.STAT., the law in effect as of the date of the dissolution trial.

8. When a duty to pay debts to third parties is at issue, whether the debt was incurred for the immediate living expenses of the recipient/beneficiary;

9. Whether the payments are intended for the economic safety of the debtor's dependents;

10. Whether the obligation is payable by installments over a substantial period of time.

*In re Nelson,* 16 Bankr. 658, 660-1 (Bankr. M.D.Tenn.1981), *rev'd in part on other grounds,* 20 B.R. 1008 (M.D.Tenn.1982). *See also In re Albin,* 591 F.2d 94, 97 (9th Cir.1979); *Shaver v. Shaver* at 1316.

In this adversary proceeding, virtually all of the guiding factors lead to the conclusion that Plaintiff's four major obligations to Defendant created under the Amended Judgment and Decree are nondischargeable under § 523(a)(5). This Court must consider the provisions of Minnesota's marriage dissolution statute in conjunction with Judge Lasley's Decree to determine his intent. MINN.STAT. c. 518 is a comprehensive codification which establishes many of the legal effects of a dissolution decree by operation of law; it also sets forth various factors which a dissolution court must consider in exercising its discretion on issues involving maintenance, support, and property division. As such, it is the backdrop against which this Court must construe the facial terms of the Decree in dischargeability analysis.

■ First, the fact that the Amended Decree does not on its face terminate Plaintiff's liability for post-decree maintenance payments upon death or marriage is not significant. MINN.STAT. § 518.64 subd. 3 (1982) provides that "[u]nless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death

of either party or the remarriage of the party receiving maintenance." Had the Decree nominally cast the award of post-decree payments as spousal maintenance but continued Plaintiff's obligation beyond the death of either party of Defendant's remarriage, it would have furnished support for a characterization as property division. The fact that it cast the award as maintenance, subject to termination under statute prior to full payment of the aggregate award, suggests the contrary. Though the same factor does not apply to the award of attorney fees, the preservation of temporary maintenance arrearages, and the debt-indemnification provisions, these obligations are nonetheless in the nature of maintenance as will be seen.

Since Plaintiff and Defendant apparently did not have children during their marriage, the second *Nelson* factor is not relevant. Third, the fact that both post-decree maintenance and temporary maintenance arrearages, and the award of attorney fees, were payable directly to Defendant indicates that they were in the nature of maintenance. *See In re Daiker* at 351.[6]

This Court's consideration of the fourth and fifth factors was hampered to some extent by the parties' failure to include Judge Lasley's Findings of Fact and Conclusions of Law as part of the record here.[7] However, Judge Lasley's Judgment and Decree and his memorandum contain numerous provisions and observations which either directly bear on these factors, or furnish this Court with the basis for appropriate inferences. Judge Lasley's emphasis on Defendant's manifest need for regular income to maintain herself during a ten-year period of education, training and work experience, supports the inference that Defendant had no income independent

---

**6.** The *Daiker* Court's conclusion that obligations not directly payable to an ex-spouse or dependent are dischargeable as a matter of law was probably overruled by the Eighth Circuit in *Williams.* 703 F.2d at 1057.

**7.** Apparently, the Martin County Court's practice in marriage dissolution proceedings is to enter Findings of Fact, Conclusions of Law, and

an Order for Judgment as a document separate from the final Judgment and Decree—unlike the practice in Hennepin, Ramsey, and St. Louis Counties, where the Clerk certifies that the Court's Findings of Fact and Conclusions of Law constitute the Court's Judgement and Decree.

from Plaintiff's farm income as of the date of the Decree; so does his observation that both Plaintiff and Defendant devoted major effort during their ten-year marriage to build up their farm business. As Judge Lasley noted, in 1981 Plaintiff derived income in excess of $65,000.00 from farming. Neither the Judgment and Decree nor the memorandum indicate that Defendant relinquished any property rights to Plaintiff other than a nominal interest as record holder of title to real estate and/or farming equipment. These documents are not utterly clear as to whether the parties had any equity in their farm and equipment as of the date of the Decree. However, all of the Decree's awards and most of the memorandum's observations are premised on an implicit finding that the parties had little or no equity in their farm assets; Judge Lasley specifically observed that a division of marital property would not give Defendant the ability to meet her own needs during a period of retraining or lower-wage employment. Thus, it appears that all of these factors—Defendant's manifest need, Plaintiff's apparent ability to pay, and the unavailability of substantial marital property for distribution to Defendant—support the conclusion that the award of post-decree payments was in the nature of maintenance.

The Decree noted that Plaintiff and Defendant had been married for ten years. This factor was material to the state court's consideration of both the maintenance and property division issues. *Compare* MINN.STAT. § 518.552 subd. 2(d) (1982) with MINN.STAT. § 518.58 (1982). Under Minnesota law, then, the duration of the parties' marriage as a factor standing alone does not shed light on the appropriate characterization of the award.

This Court considers the sixth factor to be the most significant. The terms of Judge Lasley's Decree both speak for themselves and allow appropriate inferences from their content. While the ultimate question is one of federal law, this Court may give deference to Judge Lasley's Decree. *In re Williams* at 1057. The Bankruptcy Court should give greater deference

to a state-court decree where (as here) it is not the embodiment of mutually self-serving characterizations by stipulating parties, but rather is the product of impartial fact-finding and decision-making after contested hearing. Further, greater deference should be given where the decree's language "is so unambiguous that the intent of the civil court is abundantly clear." *In re Gebhardt,* 53 B.R. 113, 115 (W.D.Mo. 1985).

As previously discussed, Judge Lasley made the basis of the award of post-decree payments manifestly clear. On the eighth factor, his memorandum clearly establishes that he structured the debt-indemnification and attorney fee provisions to protect Defendant's maintenance award. In imposing responsibility for marital debts and a portion of Defendant's dissolution attorney fees on Plaintiff, he acted to see that Defendant need not divert spousal maintenance funds from her own subsistence and educational needs. Debt-indemnification provisions may create a nondischargeable debt where they are intended to serve a support function. H.R.REP. No. 595, 95th Cong., 1st Sess. 364 (1977); S.REP. No. 989, 95th Cong., 2d Sess. 79 (1978). Plaintiff's argument that the attorney fee award is a "debt assigned to another entity" which is dischargeable under § 523(a)(5) was summarily disposed of by the Eighth Circuit's holding in *Williams.* See 703 F.2d 1057 n. 3. Under Minnesota law, the dissolution court is to consider the financial resources of the parties in determining attorney fee awards. MINN.STAT. § 518.14 (1982). Where state law allows an award of attorney fees to be based on the financial circumstances of the parties and the facts show that the recipient had need of the award, the Bankruptcy Court may find the award had a support function and is nondischargeable. *In re Williams* at 1057; *In re Spong* at 8–11; *In re Rodriguez* at 310; *In re Barth,* 37 B.R. 357 (Bankr.D.N.D.1984); *In re Hillius Farms,* 38 B.R. 334, 336 (Bankr.D.N.D.1984).

At least in part, the debt-indemnification provisions of the Decree considered Defendant's past entitlement to support from Plaintiff. Certainly, this Court must closely scrutinize such provisions to insure that they fall within the scope of § 523(a)(5). *In re Daiker* at 350–1. As Judge Lasley noted, the parties incurred almost all of their marital debt in the operation of their farm. At least a fraction of every debt incurred for the operation of a family farm is attributable to the personal living needs of the parties. Family farmers almost always reside on their farmstead. Their farm almost always provides them with food, and occasionally with other necessities of life. *See In re Williams* at 1057. Too, Judge Lasley clearly recognized that third-party creditors' enforcement of joint marital debt against Defendant could make any award of post-decree maintenance meaningless. He therefore gave Plaintiff the motivation to honor debt secured by assets awarded to him by imposing exclusive liability on him and giving Defendant a right of indemnification. It is clear that he intended the provision to balance the relative incomes of the parties. *In re Coil*, 680 F.2d at 1172.

The ninth factor has been satisfied. Though the Decree did not expressly so provide, the various maintenance obligations created in it were and are enforceable by contempt. MINN.STAT. § 518.24 (1982); *Hurd v. Hurd*, 63 Minn. 443, 65 N.W. 728 (1896). Plaintiff's obligation to make post-decree maintenance payments was and is also enforceable by statutory income-withholding procedures. MINN. STAT. § 518.611 (1982).

On the tenth factor, the payment structure of the post-decree maintenance award again suggests its characterization as spousal support. The Decree did not require Plaintiff to liquidate marital property to pay Defendant in a lump sum; rather, on the basis of the finding that Plaintiff had the ability to generate substantial ongoing income, it required him to make periodic payments to Defendant over a lengthy period, based upon her ongoing need.

█ Finally, the award of temporary maintenance arrearages was no more than a necessary preservation of Defendant's entitlement under the Temporary Order. In the absence of this provision, any award under the Temporary Order, and any arrearage in obligations created under it, would have merged with the Judgment and Decree—allowing Plaintiff to evade a duty of support imposed during the pendency of the divorce case. *See* MINN.STAT. § 518.-131 subd. 5 (1982); *Richardson v. Richardson*, 218 Minn. 42, 15 N.W.2d 127 (1944); *Trutnau v. Trutnau*, 221 Minn. 462, 22 N.W.2d 321 (1946). The fact that Defendant somehow "got by" during the pendency of the dissolution in spite of Plaintiff's failure to pay court-ordered maintenance, and the possibility that she may not have immediate need of these funds at present, are not relevant to this Court's determination of dischargeability. *In re Nelson*, 20 Bankr. at 1011–12.

█ Consideration of all of the factors, with special emphasis on the facial language of Judge Lasley's Decree, compels the conclusion that all of the awards at issue are in the nature of maintenance or spousal support rather than in the nature of property division. Thus, they are nondischargeable under 11 U.S.C. § 523(a)(5).

### C. Lien Avoidance Issues

Plaintiff's last argument is in the alternative; it assumes that the Court has concluded that Plaintiff's obligations to Defendant are nondischargeable under § 523(a)(5). Plaintiff first notes the following language of 11 U.S.C. § 502(b)(6):

(b) Except as provided in subsections (f), (g), (h), and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

.    .    .    .    .

(6) the claim is for a debt that is unmatured on the date of the filing of the

petition, and that is excepted from discharge under section 523(a)(5) of this title; ...

Plaintiff argues that his post-decree maintenance obligation was unmatured when he filed his bankruptcy Petition, and hence Defendant's entitlement to postpetition maintenance cannot be an "allowed claim," whether secured or unsecured, in Plaintiff's bankruptcy case. Turning to the following language of 11 U.S.C. § 506(d),

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) a party in interest has not requested that the court determine and allow or disallow such claim under section 502 of this title; or

Plaintiff then requests the Order of this Court avoiding the liens against Plaintiff's farm real estate and personal property which attached by operation of the Amended Judgment and Decree.

At least one Bankruptcy Court has applied these provisions to avoid a *prepetition* dissolution lien against a debtor's property imposed to secure the debtor's future obligation of family support. In deciding in favor of a Chapter 7 trustee in an action to determine the validity, priority, and enforceability of such a dissolution lien, the Court in *In re Shumate*, 42 B.R. 462 (Bankr.E.D.Tenn.1984) held that, as against the trustee, the lien was void to the extent that it secured alimony payments maturing after the commencement of the bankruptcy case. "... § 502(b)(6) makes clear that the [ex-spouse] must rely upon the nondischargeable nature of the obligation and look to the debtor's postpetition property to satisfy her claim for support payments maturing after the commencement of the bankruptcy." 42 B.R. at 467. The *Shumate* Court based its conclusion in part on the legislative history, which notes "[p]ostpetition alimony, maintenance or support claims ... are to be paid from the debtor's postpetition property, because the claims are nondischargeable." H.R.REP. No. 595, 95th Cong., 1st Sess. 353 (1977),

U.S.Code Cong & Admin.News 1978, p. 6309.

The effect of § 502(b)(6), § 506(d) and the *Shumate* decision on this adversary proceeding rests on the resolution of two separate issues.

**1. Whether Defendant's Claims Arising Under the Dissolution Decree are Allowable in Debtor's Bankruptcy Case.**

█ The threshold issue is the allowability of Defendant's various claims. The Court has determined that all of Defendant's claims are excepted from discharge under § 523(a)(5). The language of § 502(b)(6) clearly states that such claims may not be allowed in Debtor's bankruptcy case—and therefore do not entitle Defendant to share in the distribution under any confirmed plan or from any Chapter 7 estate—if they were unmatured as of the date of Plaintiff's bankruptcy filing. Debtor's post-decree maintenance obligation and attorney fee obligation to Defendant were indeed unmatured on April 22, 1983; Judge Lasley had not yet entered an Order or Decree establishing either Plaintiff's liability for these obligations or the date(s) on which they were due. Any cross-liability which Plaintiff had to Defendant under the debt-indemnification provision of the Decree was not only unmatured but also contingent; under it, Defendant had a right to be indemnified by Plaintiff if she suffered any prejudice by third-party creditors' continued enforcement of that debt against her. This obligation would arise only if Plaintiff failed to timely pay or satisfy such creditors.

The record does not indicate whether all of Defendant's claim for temporary maintenance arrearages was matured by the date on which Debtor filed his bankruptcy Petition. At least a portion of the arrearages fixed and liquidated in the Decree accrued prior to Debtor's bankruptcy filing; it is entirely possible, however, that a portion of the arrearages accrued after then. Any portion of the arrearages which accrued prior to the bankruptcy filing was matured, and would be an allowable claim in the case; any post-petition arrearages would

not be an allowable claim, and Defendant would have to seek recourse on this obligation from Plaintiff's postpetition income or property. Because the dissolution lien did not secure this arrearage, it is not necessary for the Court to decide this issue here; it will leave the issue for resolution via an objection to Defendant's claim in the main case.

**2. Whether the Dissolution Lien must be Avoided In Toto or only Against the Interest of the Estate in Plaintiff's Farm Assets.**

Plaintiff argues that the holding in *Shumate* must be applied to the instant case and that this Court must avoid in full Defendant's dissolution lien against Plaintiff's farm assets. *Shumate* is a novel and resourceful recognition of the interaction between two different sections of the Code; the Court reached a logical result on the facts presented there. However, one crucial factual distinction prevents this Court's perfunctory application of *Shumate* to fully avoid Defendant's dissolution lien.

In this case, the dissolution court created the lien *after* Plaintiff's bankruptcy case. It is impossible to tell from Judge Kressel's remand order whether he or the parties anticipated that the dissolution court would exercise its power under MINN.STAT. § 518.24 (1982) to impose liens on post-marital property to secure the maintenance award. The possibility certainly was not outside the realm of contemplation, though this Court is sure that Judge Kressel did not intend that any action by the Martin County Court diminish the bankruptcy estate or prejudice Plaintiff's chances of successful reorganization.

■ Had Judge Lasley entered the Amended Judgment and Decree prior to Plaintiff's bankruptcy filing, the Court would have no difficulty in applying *Shu-*

*mate* to avoid the liens. The Court will avoid the dissolution lien to the extent that it attached to any *equity* which Plaintiff held in the real and personal property of his farm as of April 22, 1983. This conclusion is compelled not from a literal application of *Shumate*, but from an application of 11 U.S.C. § 506(a). That section provides

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value *of such creditor's interest in the estate's interest* in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

(emphasis added). As previously noted, Defendant's claim for post-decree maintenance is not allowable under § 502(b)(6). In any event, because the lien was imposed postpetition, it cannot be said that Defendant, *as a creditor*, had an interest in any equity which Plaintiff's bankruptcy estate held in his farm assets; the estate consisted of "all legal or equitable interests of [Plaintiff] in property *as of the commencement of the case*," 11 U.S.C. § 541(a)(1) (emphasis added), and Defendant had no interest *as a secured creditor* in that property as of April 22, 1983.[8]

Thus, the dissolution lien did not attach to any equity which Plaintiff held in his farm assets as of the date of his bankruptcy filing. To the extent that the dissolution lien attached to and encumbered such equity this Court will avoid it.

■ However, the lien need not be avoided in full. This Court concludes that Judge Kressel did not prohibit the state court from fashioning appropriate relief to protect the parties' respective marital interests; he must have intended that both par-

---

**8.** Defendant may have had an interest in the property as a joint owner with Plaintiff, or as holder of an inchoate marital interest. The record is silent on this possibility. The Court will assume, first, that Defendant had no legal title interest in any of the property and—for this adversary proceeding alone—that any inchoate marital interest she had is of no consequence to

the bankruptcy-law issues raised here. This issue illustrates the difficulty in applying classifications between creditor and interest-holder in situations such as the one at bar. The Decree here may well have transformed Defendant's interest from interest-holder to creditor during the pendency of the bankruptcy case, arguably with the leave of the Bankruptcy Court.

ties bear a mutual risk in the outcome of the dissolution proceedings.[9] Judge Lasley had the power under MINN.STAT. § 518.-24 (1982) to secure Plaintiff's maintenance obligation, and he exercised it. Plaintiff's maintenance obligation was a prospective one, maturing in increments on a periodic basis. Judge Lasley clearly intended that the lien encumber Plaintiff's farm assets only to the extent that Plaintiff allowed arrearages to accrue by failing to make his maintenance payments; obviously, he imposed the lien to give Plaintiff an incentive to pay the maintenance. The accrual of arrearages would encumber only the equity which Plaintiff held as of the date of accrual. Given the lack of restrictions in Judge Kressel's remand order, Judge Lasley had at least the implied authorization of the Bankruptcy Court to do this. However, as has been seen, the lien could not encumber the equity which passed into the bankruptcy estate. It could only encumber the equity which Debtor might accumulate in his farm assets during the pendency of his bankruptcy case or after confirmation of a plan, as a result of rising land values or the paydown of encumbrances. Any equity so accumulated would not be property of the Chapter 11 estate; it may or may not be property of the estate in Plaintiff's converted Chapter 7 case.[10] *See Koch v. Myrvold,* 784 F.2d 862 (8th Cir.1986). Since the parties proceeded to finalize their dissolution upon this Court's remand order, this Court cannot conclude that the implied grant of relief from stay in that Order prohibited

the postpetition creation and attachment of liens to secure contingent liabilities arising out of Plaintiff's post-decree maintenance obligation, so long as those liens did not hamper the reorganization case by encumbering property of the estate. Thus, to the extent that the dissolution lien arises and attaches to accumulated postpetition equity, this Court will not avoid it.[11]

The state of the record does not permit a determination of the specific value of Plaintiff's farm-asset equity which is freed from encumbrance by the lien avoidance ordered here. The Court will leave these issues for resolution by parties in interest in Plaintiff's bankruptcy case or in an appropriate adversary proceeding.[12]

### ORDER FOR JUDGMENT

Based on the foregoing Findings of Fact and Conclusions of Law, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. That Terms 9, 11, 12, 13, and 14 of the Amended Judgment and Decree entered on April 26, 1984, in the dissolution of marriage action in the County Court of Martin County, Minnesota captioned *In the Matter of the Marriage of Karen Lee Anderson, Petitioner v. Larye Duane Anderson, Respondent,* were not entered in violation of the automatic stay under 11 U.S.C. § 362, and are not void;

2. That the terms of the Amended Judgment and Decree previously described es-

9. The outcome of the dissolution case shows that both parties did bear a mutual risk. Judge Lasley could have continued the parties' joint marital ownership of all of their farm assets pending a liquidation, or as security for any structured payoff of a property division award in favor of Defendant. He did not do so; instead he gave Plaintiff the benefit of sole and exclusive title to all assets, effectively prohibiting Defendant from interfering with Plaintiff's farming operations by assertion of any ownership interest. That this award came as part of a configuration of relief including a maintenance obligation secured by the assets so awarded should have come as no great surprise to any party involved.

10. The issue of whether Plaintiff's Chapter 7 Trustee may now avoid the attachment of the

dissolution lien even as to post-petition accumulation of equity is not before the Court.

11. This conclusion comports with the legislative history cited *supra* at p. 458.

12. The docket in Plaintiff's bankruptcy case reveals that the foregoing analysis may ultimately be no more than an academic exercise. On January 4 and September 3, 1985, the Court entered orders granting relief from stay to the Production Credit Association of Fairmont and the Federal Land Bank of St. Paul, Plaintiff's primary secured lenders. If state foreclosure and replevin proceedings are pending, Plaintiff may lose his equity in his farm assets, if any, in the relatively near future.

tablish liabilities of Plaintiff to or for the benefit of Defendant which constitute maintenance or spousal support and which were excepted from the discharge in bankruptcy granted to Plaintiff by this Court's Order of April 16, 1985;

3. That the liens imposed against the real and personal property of Plaintiff's bankruptcy estate under Term 13 of the Amended Judgment and Decree previously described are hereby avoided to the extent of the value of Plaintiff's equity in that property as of April 22, 1983, and are not avoided as to any equity in that property accumulated by Plaintiff after April 22, 1983.

4. That Plaintiff, Defendant, or any other party in interest may commence appropriate proceedings in this Court to determine the effect on values and property interests of the lien avoidance ordered under Term 3 of this Order for Judgment.

LET JUDGMENT BE ENTERED ACCORDINGLY.