**In re Robert E. OLSON, individually and f/d/b/a Robert E. Olson, Contractor, Peterson-Olson Manufacturing, a partnership, and Dairy King Restaurant, Debtor.**

**Albert E. BADDIN, Trustee, Plaintiff,**

v.

**Robert E. OLSON and Cathleen A. Olson, Defendants.**

Bankruptcy No. 5–84–191.

Adv. No. 5–84–33.

United States Bankruptcy Court, D. Minnesota, Fifth Division.

July 3, 1986.

Bryan N. Anderson, Michael W. Haag, Duluth, Minn., for plaintiff.

Keith M. Carlson, Duluth, Minn., for Robert E. Olson.

Greg C. Gilbert, Robert C. Pearson, Duluth, Minn., for Cathleen A. Olson.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER GRANTING PARTIAL SUMMARY JUDGMENT

GREGORY F. KISHEL, Bankruptcy Judge.

This adversary proceeding came on before the undersigned United States Bank-

ruptcy Judge upon the motion of Plaintiff (hereinafter "the Trustee") for summary judgment under FED.R.CIV.P. 56. The Trustee appeared by his attorneys, Bryan N.M. Anderson and Michael W. Haag (on the brief). Defendant Robert E. Olson (hereinafter "Debtor") appeared by his attorney, Keith M. Carlson. Defendant Cathleen A. Olson (hereinafter "Defendant") appeared by her attorneys, Greg C. Gilbert and Robert C. Pearson. Upon the moving documents, the arguments of counsel, and all of the other files, records, and proceedings herein, the Court concludes that the Trustee's motion for summary judgment must be granted as to Count 1 of the Complaint, and denied as to Count 2 of the Complaint.

### FINDINGS OF FACT

1. Debtor filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code in this Court on June 29, 1984. Plaintiff is Debtor's Chapter 7 Trustee. Debtor's A Schedules reveal no priority or secured debt, and unsecured debt of a total of $176,057.62 as of the date of filing of his Petition. Debtor's B Schedules allege that as of the date of filing Debtor owned no real estate, personal property of relatively minor value, and five shares of stock in an Arizona small business corporation. Debtor claimed all of his property as exempt on his Schedule B-4, and his case was initially denominated as a No-Asset Case by the office of the United States Trustee. Other than the sum of $750.00 [1] and the transferred property which is the subject of this adversary proceeding, the Trustee does not hold any assets for distribution to Debtor's unsecured creditors, or assert any other claims thereto.

2. Debtor and Defendant are ex-spouses. Their marriage was dissolved by a

---

1. This sum is the proceeds of a sale by the Trustee of certain real estate to Norwest Bank Duluth, N.A. It appears that in 1982 Debtor and Defendant owned this and other real estate. Norwest Bank Duluth held a mortgage against it, which it foreclosed that year. For some reason, the foreclosure omitted this real estate

and, therefore, it is still nominally property of the estate under 11 U.S.C. § 541. Norwest Bank Duluth has offered $750.00 for the estate's interest in the property to avoid a second foreclosure proceeding and the Trustee has accepted the offer.

Judgment and Decree of Dissolution of Marriage entered in St. Louis County Court on August 9, 1983. The Judgment and Decree was based on a stipulation which Debtor and Defendant reached after two days of trial. Upon the basis of the stipulation and its underlying facts, the dissolution court found that Debtor and Defendant owned, as joint tenants, a homestead located at 459 Fish Lake Road, Duluth, St. Louis County, Minnesota, legally described as follows:

Southwest Quarter of Northeast Quarter (SW¼ of NE¼), Section Twenty-three (23), Township Fifty-two (52) North of Range Fifteen (15) West of the Fourth Principal Meridian, according to the United States Government Survey thereof. EXCEPT minerals and mineral rights;

The Court further found that the homestead had a market value at that time of $130,000.00. The homestead was then, and is now, free and clear of encumbrances.

3. Pursuant to the stipulation, Conclusion of Law 3 of the Judgment and Decree granted Defendant child support in the sum of $200.00 per month for each of the parties' four minor children, to drop to $750.00 at such time as Debtor owed a duty of support for only three children. Conclusion of Law 4 severed the joint tenancy ownership of the homestead and granted Debtor and Defendant each an undivided one-half interest in it. It further granted Defendant the right of sole occupancy of the homestead until sale, which was to be made upon the occurrence of certain events; practically speaking, Defendant had the right of occupancy for a period of five years after date of entry of the Judgment and Decree. Upon sale, the net proceeds were reduced by a payment to Defendant of the sum of $17,500.00 (apparently representing a component of equity traceable to Defendant's non-marital property), with the balance being equally divided between the parties. The Judgment and Decree further provided:

Any amount or amounts of child support which Respondent is obligated to pay, and which he fails to pay, shall be applied, when due, in reduction of the Respondent's unpaid share of his interest in the homestead. At such time as interest may begin to accrue on Respondent's share, in accordance with the provisions of the following paragraph, the reduction shall apply first on such accrued interest, and the balance, if any, shall then be used in reduction of principal.

In the event the property is not sold within twenty-three (23) months after entry of the Judgment and Decree herein, in consideration of the Petitioner's being awarded the sole occupancy and possession of the homestead, the Respondent's unpaid share of said homestead, (reduced by any amount or amounts of unpaid child support), shall bear interest at the rate of ten percent (10%) per year. For purposes of this paragraph only, the value of Respondent's equity shall be presumed to be $56,250.00.

For example, if Respondent should be behind in child support payments in the aggregate amount of $10,000.00 during the first twenty-three (23) months after entry of Judgment herein, his equity in the homestead will have been reduced from $56,250.00 to $46,250.00, assuming that the homestead has not been sold and the Respondent has not been paid for that property. Interest would then be computed, in the twenty-fourth (24th) month, on the reduced sum of $46,250.00. If the Respondent should then pay in the 24th month a sum for child support which is $500 less than his obligation, his equity would then be reduced to $45,750.00, upon which sum interest would then be computed for the ensuing month. When child support is paid in full, there shall be no reduction in the Respondent's share of the homestead.

In lieu of applying any unpaid amounts of child support to reduction of interest and principal of the Respondent's interest in the homestead of the aforesaid, Petitioner may, instead, elect to apply to the Court for payment of child support and for the enforcement of such payment as permitted under the laws of the State of Minnesota.

4. Debtor completely failed to honor his child support obligation under the Judgment and Decree; by May 23, 1984, his child support arrearages totalled $7,200.00. On May 23, 1984, Debtor and Defendant entered a "Stipulation for Modification of Judgment and Decree" in their dissolution of marriage proceeding. In pertinent part the Stipulation provided that Debtor would transfer his undivided one-half interest in the parties' former homestead by execution of a quit claim deed, in return for a forgiveness of Debtor's full child support obligation "for a period of 60 calendar months from September 1, 1983 through August 31, 1988". Apparently, at some point the Stipulation was approved by one of the Judges or Judicial Officers of St. Louis County Court.[2] On or about May 23, 1984, Debtor executed the quit claim deed in favor of Defendant transferring his interest in the marital homestead. Thirty-eight days later he filed his Petition in this Court.

## CONCLUSIONS OF LAW

The summary judgment rule, FED.R. CIV.P. 56(c), applies in this adversary proceeding. BANKR.R. 7056. This Court is required to grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, and affidavits on file show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). All evidence in the record is to be viewed in the light most favorable to the party opposing the motion. *St. Louis County Bank v. United States,* 674 F.2d 1207, 1209 (8th Cir.1982); *In re Carothers,* 22 B.R. 114, 117 (Bankr.D.Minn. 1982). If the record discloses the possibility of a fact issue, the Court must deny the motion. Even where the basic facts are not in dispute, the Court must deny summary judgment when the parties reasonably disagree as to the inferences to be drawn from the facts. *Id.* However, where it appears that the material facts are undisputed, the policy of judicial economy underlying Rule 56 favors the grant of summary judgment.

The Trustee seeks the judgment of this Court avoiding Debtor's transfer of his interest in the marital homestead to Defendant under 11 U.S.C. §§ 547(b) and 548(a). The Court will treat each pleaded ground for avoidance separately.

### A. § 547(b): Preferential Transfer

The Trustee's first cause of action is based upon the following language of 11 U.S.C. § 547[3]:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition;

.   .   .   .   .

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

**2.** Though the Trustee placed a copy of the Stipulation in the dissolution action into the record for this motion, he did not submit a copy of the Order approving the Stipulation, or of the quit claim deed which was ultimately executed.

**3.** The language of § 547 in effect prior to the Bankruptcy Amendments and Federal Judge-

ship Act of 1984 governs this adversary proceeding, as Debtor filed his bankruptcy Petition prior to October 9, 1984, the effective date of the non-jurisdictional amendments to the Bankruptcy Code enacted therein. Pub.L. No. 98–353, § 553(a), 98 Stat. 333, 392 (1984).

The Trustee bears the burden of proving up all of the elements of a preferential transfer under this section, though he may initially rely upon the presumption of insolvency under 11 U.S.C. § 547(f) to establish the third element. *In Re Ramy Seed Co.*, 57 B.R. 425, 427 (Bankr.D.Minn.1985); 4 COLLIER ON BANKR. ¶ 547.52, at 547–178 (15th ed. 1986).

■ Preference analysis in this case must begin with recognition of several preliminary points. At first glance, it seems appropriate to split the consideration which Debtor received—the forgiveness of child support obligations—into two components. First is the forgiveness of past-due support arrears, in the amount of $7,200.00 (as of the date on which Debtor executed the quit claim deed) or in the amount of $8,000.00 (as of the date on which Debtor filed his bankruptcy Petition). This debt was fixed, liquidated, matured, and uncontested, both as of the date of transfer and as of the date of filing. It would have been an allowable claim in Debtor's bankruptcy case, on the basis of which Defendant would have been eligible to receive a distribution from the estate. Second is Defendant's prospective waiver of child support for an additional 52–month period. This was unmatured, and unliquidated except to the extent that Debtor and Defendant stipulated to its amount. As a debt it was by no means fixed; nor was it not at least potentially subject to dispute. Debtor's child support obligation was—and is—freely reviewable. MINN.STAT. § 518.64. Either Debtor or Defendant could have brought on a motion in St. Louis County Court to modify Debtor's obligation upon the requisite statutory showing of substantial change in circumstances. In addition, as an unmatured debt nondischargeable in bankruptcy under 11 U.S.C. § 523(a)(5), this claim would not have been allowed in Debtor's bankruptcy case. 11 U.S.C. § 502(b)(6); *In re Anderson*, 62 B.R. 448, 458 (Bankr.D.Minn.1986). Thus, to determine under § 547(b)(5) the advantage over her status in bankruptcy which Defendant allegedly received from the transfer, the Court must use only the value of child support arrearages forgiven—the value of the claim on which Defendant would have participated in the bankruptcy estate.

■ However, perhaps paradoxically, the total value of both components may be considered as the "antecedent debt" for the purposes of § 547(b)(2). This result springs from definitions. "Antecedent" is defined generally as "prior in point in time." BLACK'S LAW DICTIONARY 84 (5th ed. 1979). "Debt" is defined as "liability on a claim." 11 U.S.C. § 101(11). "Claim" is defined as "right to payment, whether or not such right is ... liquidated, unliquidated, ... matured, unmatured, disputed [or] undisputed ..." 11 U.S.C. § 101(4). Thus, even Debtor's unmatured child support obligations may be considered an antecedent debt; they were created by the Judgment and Decree prior to the transfer, and the mere fact that Defendant's entitlement to the payments had not yet matured did not make them any less a "claim" as held by Defendant and a "debt" as imposed on Debtor. The fact that they were not a claim allowable in bankruptcy is irrelevant. However, even were the unmatured support obligations not characterizable as "antecedent debt," there is no question that the accrued support arrearages alone were antecedent debt satisfying the requirement of § 547(b)(2).

On the record before the Court, there is no dispute of material fact as to the first, third, and fourth elements. First, neither party questions that Defendant was a creditor of Debtor. *See* 11 U.S.C. § 101(9). The § 547(f) presumption of insolvency imposed upon Defendant and Debtor the burden of coming forward with evidence that Debtor was not insolvent within the statutory definition under 11 U.S.C. § 101(26). FED.R.EVID. 301. Debtor and Defendant did not elicit any such evidence on this motion and, therefore, the Court must find that Debtor was insolvent on May 23, 1984, the date on which he executed the quit claim deed effecting the transfer at issue to Defendant. It is also undisputed that the transfer was effected within ninety

days prior to the date on which Debtor filed his bankruptcy Petition.

■ There is also no genuine issue of material fact as to whether the transfer enabled Defendant to receive more than she would have received in a distribution from the Chapter 7 estate. As noted earlier, for this purpose she must be deemed to have an allowed claim of $7,200.00, or of $8,000.00 at most. The Trustee has produced Debtor's A and B Schedules to establish this element. Debtor's scheduled debts totalled $176,057.62; adding Defendant's allowable claim of $8,000.00, it is clear that the potential general unsecured claims against Debtor's bankruptcy estate are in excess of $184,000.00. There are no scheduled secured or priority claims to reduce the amount of assets available to unsecured creditors. Considering $56,250.00 as the full value of the property transferred to Debtor [4], plus the $750.00 currently in the estate, as the *corpus* available for distribution, and further assuming that all scheduled creditors will timely file proofs of claim, one arrives at a dividend of about 31% to unsecured creditors. (The payment of administrative expenses and the Trustee's commissions would reduce this by some factor which need not be determined precisely here.) Defendant received payment in full of her allowable claim—and more—by the transfer. Clearly, she received more than that which she would have received via a Chapter 7 liquidation.

■ Clearly, the Trustee has proven up all five elements of an avoidable preference under § 547(b). Defendant's two pleaded additional defenses merit discussion, however. First, Defendant argues that under the terms of the Judgment and Decree she held an actual or equitable lien against Debtor's interest in the homestead to secure any child support arrearages once

accrued and that, therefore, any transfer by Debtor to her was merely in satisfaction of that lien. Conclusion of Law 4 of the Judgment and Decree clearly does not establish a specific lien in favor of Defendant against Debtor's undivided one-half interest in the homestead, even though the state court was empowered under MINN.STAT. § 518.57 to impose one. Rather, it merely establishes Defendant's right to reimbursement from a fund which would be traceable to Debtor's equity. The language of Conclusion of Law 4 does not contain any of the classic badges of a dissolution lien, such as a procedure for the fixing of the amount of the lien or for enforcement of it in the event that sale were not timely closed. It does not seem that Defendant's child support rights attached to Debtor's real estate interest with such clarity and specificity as to take priority over the rights of third-party creditors who might have levied upon Debtor's interest prior to sale. The parties obviously contemplated the homestead sale proceeds as a source of repayment. The evidence is simply not sufficient to allow this Court to find that Conclusion of Law 4 specifically created a lien in Defendant's favor. Neither is it such as to move this Court to declare an equitable lien under Minnesota state law in Defendant's favor. Where the dissolution of marriage statute specifically allowed the parties and the state court to create a lien to secure Defendant's support rights and they did not do so, it would be an inappropriate exercise of this Court's equitable powers to do so.[5]

■ Defendant also argues that the "contemporaneous exchange for new value" exception of 11 U.S.C. § 547(c)(1) applies and provides a defense to the Trustee's avoiding powers. This argument is absolutely inapplicable to any transfer made in consideration for the forgiveness

---

4. This figure is arrived at by deducting Defendant's $17,500.00 non-marital share from the stipulated value of $130,000.00 and then dividing the result by two to arrive at the value of Debtor's equity interest prior to sale. Real estate agent commissions and closing costs would re-

duce this figure in the event of sale but any such reduction would not be material.

5. Such a holding would probably also open the floodgates to Bankruptcy Court litigation seeking the establishment of equitable liens under 11 U.S.C. § 506.

of accrued support arrearages. Plainly, the exchange to that extent was made over antecedent debt and *not* for new value. The argument can only be colorable as to the prospective waiver of support entitlement. Defendant failed to come forward with any evidence clearly establishing the parties' intent. Under 11 U.S.C. § 547(a)(2),

> "new value" means money or money's worth in goods, services or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law ... but does not include an obligation substituted for an existing obligation ...

It is clear that the § 547(c)(1) exception primarily goes to *purchases by a debtor* within the applicable preference period. The legislative history suggests it is limited to questions involving purchases paid for by checks which are not presented for payment until a point within the preference period. H.R.REP. No. 595, 95th Cong., 1st Sess. 373 (1977); S.REP. No. 989, 95th Cong., 2d Sess. 88 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. It cannot be said that Defendant's waiver of future child support entitlement constituted "money or money's worth in goods, services or new credit," or a release by her of property previously transferred to her. The exception plainly is inapplicable and does not afford her a defense.

Therefore, given the lack of genuine issues as to the material facts underlying the Trustee's cause of action under 11 U.S.C. § 547(b) and the pleaded defenses, and the Trustee's entitlement to judgment as a matter of law, the Court will grant his motion for summary judgment under Count 1 of the Complaint.[6]

**B. § 548(a): Fraudulent Transfers**

■ The Trustee's second cause of action is premised on the following language of 11 U.S.C. § 548(a):

> (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—
>
> .    .    .    .    .
>
> (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
> .    .    .    .    .

Again, the burden of proof on all of these elements is on the Trustee. *In re Nacol*, 36 B.R. 566, 568 (Bankr.M.D.Fla.1983); *In re R. Purbeck & Assoc., Ltd.*, 27 B.R. 953, 954 n. 2 (Bankr.D.Conn.1983); *In re Thames*, 21 B.R. 704, 706 (Bankr.D.S.C.1981). Again, there is no dispute that Debtor transferred an interest in property to Defendant, and that he made the transfer within one year before the filing of his bankruptcy Petition. § 548 does not give the Trustee the benefit of a presumption of insolvency as does § 547. The Trustee argues that Debtor's scheduled debt structure and property holdings as of the date of filing, as well as the value of the property which he transferred in executing the quit claim deed, may be used as the basis for an inference that Debtor was insolvent

---

6. This conclusion is in line with Congressional intent underlying the provisions of the Code governing treatment of Defendant's marital rights in Debtor's bankruptcy case. As noted *supra* at p. 692, only the prepetition support arrearages owing to Defendant are an allowable claim in bankruptcy. Congress clearly intended that postpetition family support obligations were to be charged to and paid out of the debtor's postpetition income and property and not out of the bankruptcy estate, in view of their nondischargeable nature. H.R.REP. No. 595, 95th Cong., 1st Sess. 353 (1977); S.REP. No. 989, 95th Cong., 2d Sess. 63 (1978), U.S. Code Cong. & Admin.News 1978, p. 5787; *In re Anderson* at 458. Here it would contravene both this specified treatment and the general bankruptcy goal of equality in treatment of similarly-situated creditors' claims to allow Defendant and Debtor to profit by an emptying of Debtor's estate on the eve of bankruptcy to the prejudice of all of his other creditors.

within the meaning of 11 U.S.C. § 101(26) on the date of transfer, thirty-eight days prior to his bankruptcy filing. Defendant and Debtor have not come forward with any evidence on insolvency.

The Court need not determine whether it should make this inference, however, as the Trustee is not entitled to judgment as a matter of law on the issue of whether Debtor received less than a reasonably equivalent value in exchange for his execution of the quit claim deed. In *In re Hulm*, 738 F.2d 323 (8th Cir.1984), the Eighth Circuit addressed the issue of avoidability of a mortgage foreclosure sale within the context of 11 U.S.C. § 548(a). While *Hulm* involved the relatively novel issue of whether a judicial foreclosure sale of real estate can constitute a transfer subject to avoidance under § 548, the Eighth Circuit held that in that case "the question of whether the sale price provided a reasonably equivalent value cannot be answered without an evidentiary hearing." 738 F.2d at 327. This holding arguably is limited to the specific factual setting of *Hulm*, which most courts and commentators have found involves many complications of fact and law. *See, e.g., In re Jacobson*, 48 B.R. 497 (Bankr.D.Minn.1985). However, this Court reads it as a strong directive that the issue of "reasonably equivalent value" should in most cases be decided after full evidentiary development by a finder of fact, as, in general, all questions of "reasonableness" are. *See also Gray v. Snyder*, 704 F.2d 709, 713 (4th Cir.1983) (remanding for factual determination of whether debtor's wife's release of right to spousal support was reasonable equivalent value for quit-claiming of homestead interest).

Thus, even though Defendant failed to come forward with any evidence denying the reasonable equivalency of the value exchanged for Debtor's real estate interest, other than her attorney's conclusory argument that the value of the homestead as of the date of the transfer was not the stipulated value of $130,000.00 reached in the dissolution, in the context of this adversary proceeding the Court feels compelled to deny summary judgment on the Trustee's count under § 548. The parties argue to opposite effect over the reasonable equivalence between the alleged support entitlement of more than $47,000.00 and the value of Debtor's real estate interest. The parties may be mainly arguing that different inferences should be made from the basic (perhaps largely undisputed) facts. In this posture, summary judgment would be inappropriate.

Debtor and Defendant argue at some length that this Court should exercise its equitable powers to consider the interests of Debtor's and Defendant's minor children and their right to support from Debtor. Certainly, the children are innocent third parties who are entitled to the care and support of both of their parents. However, this argument begs the question. Neither Debtor nor Defendant have shown that the children will be denied Debtor's care and support by the avoidance of his preferential transfer of his real estate interest; they did not show that Defendant's immediate household expenses decreased in any measure by the transfer of the interest, that she liquidated her enhanced homestead equity to divert Debtor's interest to the ongoing needs of the children, or that the transfer in any way impacted upon the children's standard of living. Certainly, Defendant's augmented equity might have benefited the children in the event of sale, by enabling Defendant to purchase a replacement home without taking on mortgage liability. However, there is no indication in the record that Defendant has sold the homestead, and it is now long after both the entry of the Judgment and Decree and the execution of the quit claim deed. The transfer seems to have resulted more in short-term benefit to Debtor than in benefit to anyone else; it relieved him of his ongoing support obligation for an extended period. While this Court is as cognizant of the children's needs as any, it cannot see how they will be negatively affected—in either short and long term—by the reimposition on Debtor of the obligation of periodic support payments. Simply stated, Debtor should not be allowed to cloak his diminu-

tion of the bankruptcy estate in the guise of the actions of an attentive parent, when that action did not directly or immediately benefit his children and when he has not otherwise furnished support to them.

### C. Conclusion

The Trustee has established his right to judgment under § 547(b) but has not done so under § 548(a). Practically speaking, a grant of judgment under the former will grant him all the relief he requests and the Court assumes he will eventually dismiss Count 2 of his Complaint.

### ORDER FOR JUDGMENT

Based upon the foregoing Findings of Fact and Conclusions of Law, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. That Plaintiff's motion for summary judgment is granted as to Count 1 of his Complaint and denied as to Count 2 of his Complaint.

2. That Defendant Robert E. Olson's transfer by quit claim deed in favor of Defendant Cathleen A. Olson on May 22, 1984, of an undivided one-half interest in the following real estate located in St. Louis County, Minnesota:

> Southwest Quarter of Northeast Quarter (SW¼ of NE¼), Section Twenty-three (23), Township Fifty-two (52) North of Range Fifteen (15) West of the Fourth Principal Meridian, according to the United States Government Survey thereof. EXCEPT minerals and mineral rights;

is hereby adjudged null and void, pursuant to 11 U.S.C. § 547(a).

3. That Plaintiff may recover from Defendant Cathleen A. Olson for the benefit of the estate by appropriate means (including the acceptance of a quit claim deed in his favor) the property whose transfer was avoided by Term 2 of this Order for Judgment, pursuant to 11 U.S.C. § 550(a).

LET JUDGMENT BE ENTERED ACCORDINGLY.